1  Brian J. Iller, WSBA #16150
2  RETTIG OSBORNE FORGETTE, LLP
   6725 W. Clearwater Avenue
3  Kennewick, WA 99336
   T. (509) 783-6154
4  F. (509) 783-0858
   bji@rettiglaw.com
5

6

7              UNITED STATES DISTRICT COURT FOR THE

8                EASTERN DISTRICT OF WASHINGTON

9  JAMES BUSEY, an individual,

10                              Plaintiff,

11              vs.                        Case No.: CV-13-5022-EFS

12  RICHLAND SCHOOL DISTRICT;             COMPLAINT FOR CIVIL RIGHTS
13  RICHARD JANSONS; HEATHER              LIABILITY UNDER 42 U.S.C. §
    CLEARY; MARY GUAY; RICK               1983, FOR DECLARATORY
14  DONAHOE; and PHYLLIS                  JUDGMENT, AND FOR LEGAL
                                          AND EQUITABLE RELIEF UNDER
15  STRICKLER,                            OTHER FEDERAL AND STATE
                                          LAWS
16                              Defendants.

17                                        [DEMAND FOR JURY TRIAL]

18

19

20

21

22

23

24

25  COMPLAINT- PAGE 1                              Rettig Osborne Forgette, LLP
    y:\bji\clients\busey\usdc\buseycomplaint 022513 bji edit.doc    6725 W. Clearwater Avenue
                                                 Kennewick, WA 99336
                                                 509-783-6154

COMES NOW, the plaintiff, by and through his attorney, Brian J. Iller, of RETTIG, OSBORNE, FORGETTE, O'DONNELL, ILLER & ADAMSON, LLP, alleges and avers the following claims against the above-named defendants as follows:

## I. JURISDICTION

1.1    Plaintiff James Busey, Ed.D. (Busey), is a resident of Benton County, State of Washington.

1.2    Richland School District (RSD) is a public school district formed and operated pursuant to RCW Chapter 28A, and located in Benton County, State of Washington.

1.3    The individual defendants, Richard Jansons, Heather Cleary, Mary Guay, Rick Donahoe, and Phyllis Strickler, are RSD Board Members who took the actions complained of herein and each of whom reside in Benton County, State of Washington.

1.4    This complaint asserts claims under 42 USC § 1983 for violation of clearly-established constitutional property rights of Busey.

1.6    All conduct from which the claims asserted herein arose occurred in Benton County, State of Washington.

COMPLAINT- PAGE 2
y:\bji\clients\busey\usdc\buseycomplaint 022513 bji edit.doc

Rettig Osborne Forgette, LLP
6725 W. Clearwater Avenue
Kennewick, WA 99336
509-783-6154

1.7   Busey has not completed calculating his damages, but expects that the final damages claimed in this case will be in excess of $1,000,000.00 (One Million Dollars).

1.8   This Court has jurisdiction and/or supplemental jurisdiction over the defendants and over the claims made herein and is a proper venue for the claims made in this case pursuant to 28 U.S.C.A. § 1343 and 28 U.S.C.A. § 1367.

## II.  UNDERLYING FACTS

2.1   Busey was hired as the Superintendent of RSD on or about March 9, 2010.  At all times relevant hereto, Busey performed his duties fully and to the complete satisfaction to the RSD Board.

2.2   The written contact between Busey and RSD contains a narrow arbitration clause requiring arbitration only of claims "arising hereunder." Attached as Exhibit "A" is an accurate copy of that contract received by fax from attorneys for RSD.  By filing this action to assert his constitutional and statutory rights, Busey does not waive, and affirmatively preserves, his right to arbitrate disputes arising under the contract.

2.3   Busey has at all times during his employment at RSD held a certificate granted pursuant to RCW 28A.410.210 and WAC 181-79A-140 which

COMPLAINT- PAGE 3
y:\bji\clients\busey\usdc\buseycomplaint 022513 bji edit.doc

Rettig Osborne Forgette, LLP
6725 W. Clearwater Avenue
Kennewick, WA 99336
509-783-6154

authorizes him to act as a superintendent of public schools in the State of Washington.

2.4    Busey had a consensual romantic and sexual relationship with Debbie Hamilton during Fall, 2011, and in 2012. Debbie Hamilton was a para-educator employed by RSD at an elementary school.

2.5    Debbie Hamilton did not report to Busey in the course of her work.

2.6    Debbie Hamilton was not supervised by Busey in the course of her work.

2.7    Debbie Hamilton reported to Regina "Gina" Begalka, who reported to school principal Bobbie Butters, who reported to assistant superintendent Mike Hansen, who reported to Busey.

2.8    Debbie Hamilton was supervised by Regina "Gina" Begalka, who was supervised by Bobbie Butters, who was supervised by Mike Hansen, who was supervised by Busey.

2.9    On November 8, 2012, Busey was approached by RSD general counsel, Galt Pettett, who stated he had learned that Busey was having a romantic relationship with Ms. Hamilton.

2.10    Busey acknowledged the relationship to Pettett on November 8, 2012.

COMPLAINT- PAGE 4
y:\bji\clients\busey\usdc\buseycomplaint 022513 bji edit.doc

Rettig Osborne Forgette, LLP
6725 W. Clearwater Avenue
Kennewick, WA 99336
509-783-6154

2.11   Pettett advised Busey that RSD would be investigating the relationship and that Busey should disclose the relationship to RSD Board President Richard Jansons.

2.12   Busey reported the romantic relationship to RSD Board President Richard Jansons on November 8, 2012.

2.13   RSD investigated the relationship between Busey and Ms. Hamilton in November, 2012.

2.14   RSD's investigation of the relationship between Ms. Hamilton and Busey included interviews with Ms. Hamilton, Busey, and others between November 8, 2012, and November 21, 2012 (hereinafter the "November Investigation").

2.15   Based on information and belief, Ms. Hamilton reported to Tony Howard on or about November 21, 2012, that her relationship with Busey was entirely consensual and that Busey had acted as a gentleman at all times.

2.16   After RSD concluded its investigation, on November 21, 2012.  RSD Board President Rick Jansons subsequently advised Busey that the investigation had been concluded, there was no breach of contract, breach of RSD policy or regulation, or violation of law, and Busey's job was secure.

COMPLAINT- PAGE 5
y:\bji\clients\busey\usdc\buseycomplaint 022513 bji edit.doc

Rettig Osborne Forgette, LLP
6725 W. Clearwater Avenue
Kennewick, WA 99336
509-783-6154

2.17  On or about December 7, 2012, the Tri-City Herald newspaper posted a report online stating that RSD Board President Jansons had confirmed that there was an investigation of an inappropriate relationship of Busey with a staffer.

2.18  On December 7, 2012, RSD was not investigating any inappropriate relationship. .

2.19  As of December 7, 2012, the investigation of the relationship with Ms. Hamilton had been completed.

2.20  On or about December 10, 2012, RSD placed Busey on paid administrative leave.

2.21  On or before December 11, 2012, the RSD Board decided to terminate Busey's employment.

2.22  Busey was not provided any written notice of the Board's December, 2012, decision to terminate his employment.

2.23  The RSD Board did not provide Busey with a written notice that it had determined in December, 2012, that it had probable cause to terminate Busey's employment.

2.24  The RSD Board did not provide Busey with an opportunity to request a hearing before it decided to terminate Busey's employment in December, 2012.

COMPLAINT- PAGE 6
y:\bji\clients\busey\usdc\buseycomplaint 022513 bji edit.doc

Rettig Osborne Forgette, LLP
6725 W. Clearwater Avenue
Kennewick, WA 99336
509-783-6154

2.25   After the RSD Board had already made the decision to terminate Busey's employment in December, 2012, RSD engaged in a new investigation of the relationship, which was a sham intended only to justify the decision to terminate Busey's employment that had already been made (hereinafter the "Sham Investigation").

2.26 The Sham Investigation was carried out in a manner that was designed not to produce and preserve evidence that would support a reasoned and unbiased decision by the Board of Directors, but instead was carried out in a manner designed to estrange Ms. Hamilton from Busey and to pressure, intimidate, and coerce Ms. Hamilton into changing her original, truthful statement that her relationship with Busey was consensual.

2.27   On January 22, 2013, the RSD Board voted unanimously to terminate the employment of Busey as Superintendent of the RSD effective immediately.

2.28   The RSD Board did not, prior to voting to terminate Busey's employment effective immediately, provide written notice that it had concluded that RSD had probable cause to terminate Busey's employment.

2.29 The RSD did not, prior to voting to terminate Busey's employment effective immediately, provide Busey with an opportunity for a hearing before the Board.

COMPLAINT- PAGE 7
y:\bji\clients\busey\usdc\buseycomplaint 022513 bji edit.doc

Rettig Osborne Forgette, LLP
6725 W. Clearwater Avenue
Kennewick, WA 99336
509-783-6154

2.30    At the time they took the action to terminate Busey's employment immediately without providing him written notice of probable cause or a right to hearing, the RSD Board members knew or should have known that Busey was entitled to such written notice under RCW 28A.405.300, which provides, and at all relevant times provided, as follows:

> In the event it is determined that there is probable cause or causes for a teacher, principal, supervisor, superintendent, or other certificated employee, holding a position as such with the school district, hereinafter referred to as "employee", to be discharged or otherwise adversely affected in his or her contract status, such employee shall be notified in writing of that decision, which notification shall specify the probable cause or causes for such action. Such determinations of probable cause for certificated employees, other than the superintendent, shall be made by the superintendent. Such notices shall be served upon that employee personally, or by certified or registered mail, or by leaving a copy of the notice at the house of his or her usual abode with some person of suitable age and discretion then resident therein. Every such employee so notified, at his or her request made in writing and filed with the president, chair of the board or secretary of the board of directors of the district within ten days after receiving such notice, shall be granted opportunity for a hearing pursuant to RCW 28A.405.310 to determine whether or not there is sufficient cause or causes for his or her discharge or other adverse action against his or her contract status.

> In the event any such notice or opportunity for hearing is not timely given, or in the event cause for discharge or other adverse action is not established by a preponderance of the evidence at the hearing, such employee shall not be discharged or otherwise adversely affected in his or her contract status for the causes stated in the original notice for the duration of his or her contract.

Rettig Osborne Forgette, LLP
6725 W. Clearwater Avenue
Kennewick, WA 99336
509-783-6154

If such employee does not request a hearing as provided herein, such employee may be discharged or otherwise adversely affected as provided in the notice served upon the employee.

Transfer to a subordinate certificated position as that procedure is set forth in RCW 28A.405.230 or 28A.405.245 shall not be construed as a discharge or other adverse action against contract status for the purposes of this section.

2.31   RCW 28A.405.300 provides Busey with a clearly-established, constitutionally-protected property right which cannot be taken without a pre-deprivation hearing under Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), and its progeny.

2.32   The RSD Board members knew or should have known at the time they took the action to terminate Busey's employment immediately without providing him an opportunity for a hearing prior to that termination, that Busey was entitled to such written notice under RCW 28A.405.300 and that its action violated Busey's constitutional rights.

2.33   Busey's rights under RCW 28A.405.300 to notice of probable cause and a pretermination hearing are clearly established under Washington law and under federal law as established by Loudermill, *supra*, and its progeny.  Indeed, the Washington State Supreme Court stated in Martin v. Dayton Sch. Dist. No. 2, 85 Wash.2d 411, 412, 536 P.2d 169 (1975):

Rettig Osborne Forgette, LLP
6725 W. Clearwater Avenue
Kennewick, WA 99336
509-783-6154

The legislative direction of [RCW 28A.405.300] is remarkably clear. The school district must notify a teacher that the district, through its board of directors, has decided that it has probable cause to discharge or otherwise adversely change the teacher's contract status. The notice must specify the cause or causes. It need do no more, but it must reflect a decision of probable cause, not a judgmental conclusion that the board's mind is closed.

The same statute protects all certified employees, including Busey.

2.34 Busey, by letter from his attorneys dated February 14, 2013, to RSD's attorney, Gregory Stevens, advised RSD that its purported termination of Busey was in violation of RCW 28A.405.300 and demanded that Busey be returned to duty. A true and correct copy of that letter is attached hereto as Exhibit "B."

2.35 RSD has refused to acknowledge that Busey remains employed pursuant to the terms of RCW 28A.405.300 and instead falsely characterized its January 22, 2013 action as not terminating Busey's employment effective immediately.

2.36 On February 4, 2013, Busey's attorneys received a copy of a final termination letter dated January 30, 2013, from RSD's attorneys, via e-mail. A true and correct copy of that e-mail and the attached letter is attached hereto as Exhibit "C," and is hereinafter referred to as "Termination Letter." Busey denies the existence of the purported causes for termination, except he admits he had a

COMPLAINT- PAGE 10
y:\bji\clients\busey\usdc\buseycomplaint 022513 bji edit.doc

Rettig Osborne Forgette, LLP
6725 W. Clearwater Avenue
Kennewick, WA 99336
509-783-6154

consensual, voluntary, loving relationship with Ms. Hamilton that in no way affected his work performance. Busey alleges that the bases stated in the letter (except for the reference to "extramarital affair" as discussed below) are false and pretextual and not actual reasons for the termination decision.

2.37   The Termination Letter expressly bases the termination in part on Busey's "extramarital affair."

2.38   The use of the term "extramarital" in the Termination Letter expressly makes Busey's marital status a substantial factor in the decision to terminate Busey's employment.

2.39   The Washington Law Against Discrimination ("WLAD"), RCW Ch. 49.60, creates a clearly-established right for Busey and all employees in the State of Washington to be free of discrimination in employment based on marital status. RCW 49.60.180 provides said right, in relevant part:

> It is an unfair practice for any employer:
>
> * * *
>
> (2) To discharge or bar any person from employment because of . . . marital status . . . .

Rettig Osborne Forgette, LLP
6725 W. Clearwater Avenue
Kennewick, WA 99336
509-783-6154

2.40 The RSD Board members knew or should have known that their termination of Busey based in substantial part on his marital status violated Busey's clearly-established rights under the WLAD.

2.41 The RSD Board members acted in concert and as a conspiracy in violating Busey's right not to be discharged from employment based on his marital status.

2.42 The RSD is obligated under the Washington Public Records Act, RCW Ch. 42.56 (hereinafter "PRA"), to preserve and provide access to public records within five (5) days of request, with certain exceptions.

2.43 Each member of the public has a clearly-established right under the PRA to obtain records in a timely fashion from RSD in compliance the PRA.

2.44 RSD has repeatedly violated the PRA by failing to respond to Busey's PRA requests in a timely fashion.

2.45 RSD has responded to a PRA request by Tri-City Herald reporter Ty Beaver that is substantially identical to a records request submitted by Busey before Beaver's request.

2.46 RSD has either destroyed public records of its November Investigation of the relationship between Busey and Ms. Hamilton, in violation of

COMPLAINT- PAGE 12
y:\bji\clients\busey\usdc\buseycomplaint 022513 bji edit.doc

Rettig Osborne Forgette, LLP
6725 W. Clearwater Avenue
Kennewick, WA 99336
509-783-6154

the PRA, or has violated the PRA by failing to provide those records in response to the Tri-City Herald's and Busey's PRA requests.

2.47  RSD knew or should have known that its conduct in destroying or failing to provide the records of its November Investigation violated Busey's clearly-established rights under the PRA.

2.48 Under the terms of RCW 28A.405.300, Busey is still employed by RSD.  RSD has not responded directly to Busey's attorneys' demand that he be returned to duty.  RSD has instead advised the Tri-City Herald that Busey's termination "stands" and that it is looking for Busey's replacement.

2.49 Busey is, under the terms of RCW 28A.405.300, still employed by RSD and, therefore, still entitled to compensation as set forth in his Contract throughout the term of that Contract, which ends on June 30, 2015.

2.50  The right to be compensated for employment pursuant to the contract is a clearly-established legal right under Washington law, including but not limited to the Washington wage and hour laws, including but not limited to RCW Ch. 49.48 and Ch. 49.52.

2.51 RSD's failure to pay Busey the amounts due under that contract despite its full knowledge that its purported termination of Busey was ineffective, was "willful" as used in cases arising under Washington RCW 49.52.070.

COMPLAINT- PAGE 13
y:\bji\clients\busey\usdc\buseycomplaint 022513 bji edit.doc

Rettig Osborne Forgette, LLP
6725 W. Clearwater Avenue
Kennewick, WA 99336
509-783-6154

2.52   RSD's and the RSD Board members' actions taken in violation of Busey's clearly-established civil rights were malicious, oppressive and/or in reckless disregard of Busey's rights.

2.53   Busey has suffered general and special damages as the result of the wrongful, tortious, and illegal conduct of RSD and the RSD Board members.

## III. CLAIMS FOR RELIEF

3.1   Section 1983 Civil Rights.   The individual Board Member defendants are liable for compensatory damages, punitive damages, attorneys' fees and costs under 42 U.S.C. § 1983, et seq., for violating Busey's civil right to a pretermination hearing, in an amount to be proven at trial.

3.2   State Law Marital Status Discrimination:   RSD and the individual Board members are liable under the WLAD for discrimination in employment based on marital status, in an amount to be proven at trial.

3.3   Liability for Double Wages and Attorney's Fees Under State Wage Laws:   Defendants are jointly and severally liable for violation of RCW Chs. 49.48 and 49.52, and are therefore liable to Busey for double damages as to all compensation he is owed under his Contract, and for his attorneys' fees and costs in securing the payment of that compensation.

COMPLAINT- PAGE 14
y:\bji\clients\busey\usdc\buseycomplaint 022513 bji edit.doc

Rettig Osborne Forgette, LLP
6725 W. Clearwater Avenue
Kennewick, WA 99336
509-783-6154

3.4    <u>Declaratory Judgment</u>:  Busey is entitled to a Declaratory Judgment that:

a. RSD's purported termination of Busey's employment was in violation of Busey's rights under RCW 28A.405.300;

b. RSD's purported termination of Busey's employment was ineffective and violative of RCW 28A.405.300, and therefore was ineffective;

c. Busey remains employed and entitled to compensation under his employment contract until June 30, 2015.

3.5  <u>Washington PRA</u>:  Busey is entitled to recover penalties and attorneys' fees and costs in an amount to be determined at trial pursuant to RCW Ch. 49.56.550 for violation of the PRA.

## PRAYER FOR RELIEF

WHEREFORE, Busey prays for judgment against defendants, and each of them, as follows:

1  That Busey be awarded judgment, jointly and severally, against defendants for money damages in an amount to be proven at trial;

2. That the Court enter a Declaratory Judgment that:

a. RSD's purported termination of Busey's employment was in violation of Busey's rights under RCW 28A.405.300;

Rettig Osborne Forgette, LLP
6725 W. Clearwater Avenue
Kennewick, WA 99336
509-783-6154

    b. RSD's purported termination of Busey's employment was ineffective and violative of RCW 28A.405.300 and therefore was ineffective;

    c. Busey remains employed and entitled to compensation under his employment contract until June 30, 2015;

3.  That Busey be awarded judgment for double damages pursuant to RCW 49.52.070, jointly and severally against all defendants.

4.  That Busey be awarded judgment for punitive damages under 42 U.S.C. § 1983 against the individual Board member defendants.

5.  That Busey be awarded his actual attorneys' fees and costs pursuant to RCW 49.48.020, RCW 49.60.030(2), 42 U.S.C. § 1990, and pursuant to any other applicable statute and/or theory of equity; and

6.  That the Court grant such other and further relief as it deems just and equitable.

DATED THIS 25th day of February, 2013.


RETTIG OSBORNE FORGETTE, LLP

By: s/ Brian J. Iller
BRIAN J. ILLER, WSBA #16150
*Attorneys for Plaintiff*

Rettig Osborne Forgette, LLP
6725 W. Clearwater Avenue
Kennewick, WA 99336
509-783-6154

# EXHIBIT "A"

2010-2011

# RICHLAND SCHOOL DISTRICT NO. 400

Richland, Washington

### SUPERINTENDENT'S EMPLOYMENT CONTRACT

### (Effective July 1, 2010 through June 30, 2013)

THIS CONTRACT is made and entered into as of the 1st day of July, 2010 by and between

> **Board of Directors**
> **Richland School District No. 400**
> **615 Snow Avenue**
> **Richland, Washington 99352**

hereinafter referred to as the "Board" and

> **James Busey**
> **Post Office Box 2134**
> **Chelan, Washington 98816**

hereinafter referred to as the "Superintendent."

WHEREAS, the Board desires, pursuant to RCW 28A.400.010, to employ **James Busey** as Superintendent and to execute with him a Superintendent's Employment Contract; and

WHEREAS, **James Busey** desires to be employed by the Board in accordance with the terms and conditions of this Superintendent's Employment Contract; and

NOW, THEREFORE, for and in consideration of the mutual covenants and promises hereinafter contained, it is agreed by and between the parties that the Superintendent's Employment Contract, effective July 1, 2010, is as follows:

1.  <u>EMPLOYMENT</u>. In consideration of the terms herein, the Board agrees to employ Superintendent and Superintendent agrees to perform faithfully and pursuant to law and the policies, rules and regulations made there under by the Board the duties of superintendent of Richland School District No. 400 (hereinafter referred to as the "District") and to serve as Secretary and Executive Officer of the Board.

18

2.  TERM. The term of this contract shall take effect as of July 1, 2010 and continue in force thereafter through June 30, 2013. There are no automatic extensions or "roll-overs" of this contract. Contract extensions, if any, will be in accordance with the following provisions.

Each year, this contract may be extended for an additional one year term only with express approval by the Board, which may be withheld for any reason deemed suitable by the Board. The contract will not be extended for any period of time without the express, written approval of the Board.

The first decision to extend the contract by an additional year will be made by the Board on or before July 1, 2011. Subsequent decisions, if any, to extend the contract by an additional year will be made by March 31 of each subsequent year.

3.  FULL-TIME EFFORTS. Superintendent hereby agrees to devote his full time, skill, labor and attention to said employment during the term of his contract; provided, however, that the Superintendent, by agreement with the Board may undertake consultative work, speaking engagements, writing, lecturing, or other professional duties and obligations in accordance with state law.

4.  ORGANIZATION OF DISTRICT. Except as otherwise specifically provided or limited by law, Superintendent shall:

A.  Have the complete freedom to act as the chief executive officer of the Board and District; and

B.  Direct and assign teachers and all other employees of the District under Superintendent's supervision; and

C.  Recommend to the Board the selection, employment and discharge of all personnel within the District, including, specifically, all administrative and supervisory staff, provided that final action shall rest with the Board in accordance with state statutes and the policies and procedures adopted by the Board; and

D.  Recommend to the Board the composition, organization, reorganization and arrangement of the administrative and supervisory staff, including instructional and business affairs, in such manner

2

19

as, in his professional judgment and experience best
serves the interests of the educational process and
the District; and

E.  Handle the administration of the instructional and
business affairs of the District with the assistance
of such administrative staff as he deems appropriate
and has been provided to him by the Board; and

F.  From time to time, suggest policies, procedures, and
rules deemed necessary for the well ordering of the
District.

5.  COMMUNICATION WITH BOARD.  Except in the case of extraordinary
circumstances, the Board, collectively or individually, shall
use its best efforts to promptly refer to the Superintendent
all significant criticisms, complaints and suggestions called
to their attention relative to Superintendent or the School
District for Superintendent's study and recommendation.
However, even in the case of such extraordinary circumstances,
the Board shall inform the Superintendent of such criticisms,
complaints and suggestions, in due course, with an explanation
of the reasons why the complaints, criticisms and suggestions
were not promptly referred to the Superintendent.

The Superintendent shall, in timely fashion, inform the Board
of significant criticisms, complaints, and suggestions which
arise so the Board members can be prepared to deal with such
questions within the District.  Prompt mutual communication of
problems is expected and encouraged.

While nothing in this paragraph shall be construed in any way
as limiting the right of the Board to secure information from
employees of the District, the Board recognizes that, under
normal circumstances, communications between the District's
staff and the Board shall be through the Superintendent.

6.  SUPERINTENDENT'S SALARY.  The Superintendent's base salary for
the period between July 1, 2010 and June 30, 2011 shall be
$149,000.00.  For the ▓▓▓▓▓▓2 and ▓▓▓▓▓▓▓ contract years,
the Superintendent's salary will be the same as the above
noted base salary with a ▓▓▓▓▓▓▓▓▓▓ and l▓▓▓▓▓▓▓▓▓▓▓e
increase ▓▓▓▓▓▓▓▓.

This salary shall be paid in equal monthly installments in
accordance with the rules of the Board governing payment of
other  professional  staff  members  in  the  District.

3

26

The per diem rate for all purposes under this contract and the District benefit policies and procedures shall be at the agreed rate of 1/214th of the total of the Superintendent's base annual salary noted above as adjusted annually for cost of living or other increases resulting from the above negotiations.

7.    AUTOMOBILE AND TRANSPORTATION. The Superintendent shall be reimbursed at the per mile rate payable to certificated employees within the School District for all school district related travel, within or outside the district boundaries.

8.    PROFESSIONAL ACTIVITIES. Superintendent is encouraged to participate in and attend appropriate professional meetings, at the local, state and national levels, of professional organizations and associations of benefit to the Superintendent and the District including, but not limited to, the:

        1. Washington State School Directors Association
        2. Washington Association of School Administrators
        3. American Association of School Administrators
        4. National School Boards Association

The District shall pay dues, expenses, travel and association fees for Superintendent's membership in such organizations and other professional organizations as are approved in advance by the Board. As approved from time to time by the Board or in accordance with its general policies, reasonable costs of attendance will be paid by the District.

9.    VACATION. Superintendent shall be granted thirty three (33) working days for vacation annually, exclusive of legal holidays. The legal holidays include and are limited to: New Year's Day and the day before, Martin Luther King Day, President's Day, Memorial Day, Independence Day, Labor Day, Veteran's Day, Thanksgiving and the day following, Christmas Eve and Christmas Day. Each year, a minimum of (eight (8)) vacation days will be paid at the current per diem rate in effect at the time of the disbursement, and the remaining twenty five (25) days will be used or accumulated year to year for a maximum of fifty (50) working days. A maximum of thirty (30) days of accumulated vacation pay will be subject to cash-out at retirement.

4

10. SICK LEAVE. Superintendent shall be entitled to twelve (12) working days sick leave each year. A maximum of one hundred eighty (180) days are subject to cashout buy-back rights pursuant to Washington State law. Superintendent shall be entitled to participate in the District leave-sharing program on the same basis as any other certificated employee.

11. OTHER BENEFITS. In addition to, but without duplication of, the benefits specifically set forth herein, Superintendent shall receive or participate in the benefits provided generally to full-time administrative staff members of the District, including, but not limited to, personal leave, bereavement leave, disability, life, and health insurance and retirement benefits, and personal leave days.

One-half of the out-of-pocket cost for health, vision and dental insurance shall be provided for the Superintendent's spouse. In the event the Superintendent's spouse obtains employment that provides health, vision and dental insurance, the District will, at the Superintendent's request, discontinue health, vision and dental insurance for his spouse and pay the realized cost savings on the part of the district to the Superintendent. Such other benefits are subject to change at any time on the same basis as changed for other full-time professional administrative employees.

12. Moving Expenses. The superintendent shall be entitled to moving expenses/claims associated with moving household goods from Chelan, Washington to Richland, Washington. These expenses/claims may be made up to June 30, 2013, and may include two separate moves. The cumulative maximum expenses/claims associated with this paragraph shall not exceed $20,000.00.

13. Transitional Employment. The superintendent is expected to begin transition before July 1, 2010 which will require him to spend time in the district working with board members, administrators, staff and community members. The superintendent will be reimbursed for mileage and hotel expenses per district policy, and will be paid for each day worked up to a maximum of 30 days at the per diem rate defined in paragraph six (6) above.

14. OFFICE, STAFF SUPPORT AND EQUIPMENT. The Board shall provide Superintendent with an adequate office, office furnishings and equipment, including professional publications, computers,

cellular telephone, pager, video, dictation and recording
equipment, including such portable and home office equipment,
as are deemed reasonably necessary by Superintendent to
accomplish his duties in an efficient and productive manner.
The Board shall employ an executive secretary who shall be an
exempt, confidential employee.

15.  **ADMINISTRATIVE TRAINING.**  The Superintendent will receive a
stipend equivalent to 3 per diem days per month during the
life of this contract for his efforts in developing and
maintaining a training system for aspiring administrators
(District and building) for future growth in the District.
Said payments will be made in equal monthly installments.

16.  **EXTRA ACTIVITIES.**  The Board acknowledges that the
Superintendent will be required to travel and/or attend many
activities in the evening as well as weekends throughout the
term of the contract.  In recognition of that time, the
Superintendent shall receive an additional payment equivalent
to 3 per diem days per month for the term of the contract.
Said payment will be made in equal monthly installments.

17.  **EVALUATION.**  Twice each calendar year, the Board shall,
pursuant to RCW 28A.405.100(2), evaluate and review with
Superintendent the Superintendent's performance as
superintendent of the District.  This evaluation shall be
based, at a minimum, upon the statutory criteria, the goals of
the District, the relationship between the Superintendent, the
Board, the staff, students, parents and the community at
large.

The Board and the Superintendent shall meet twice each
calendar year concurrent with the Superintendent evaluation to
review and establish District goals and objectives.  These
goals and objectives shall be reduced to writing and, to the
extent applicable, shall be considered by the Board in
evaluating the Superintendent.

The Board and the Superintendent shall mutually determine the
evaluation form and process provided the general provisions of
the above paragraph are met. The Superintendent shall advise
the Board of this evaluation obligation twice each calendar
year.

18.  DISCHARGE AND TERMINATION.  Superintendent may be discharged
and this contract terminated at any time during the term of

6

23

Case 2:13-cv-05022-TOR    Document 1    Filed 02/25/13

this contract for just cause. In the event of discharge Superintendent shall have the right to service of written charges, notice of hearing, and a hearing before the Board sitting in executive session. In addition, this contract may be terminated pursuant to paragraphs 19 (pertaining to death) and 20 (pertaining to disability), below. The Superintendent will assume and pay the cost of his legal expenses.

19. DEATH DURING EMPLOYMENT. If Superintendent shall die during the term of this employment, the Board shall pay to the estate of Superintendent the compensation which otherwise would be payable to Superintendent up to the end of the month in which Superintendent's death occurs. Thereafter, the Board shall have no further responsibilities hereunder, and this contract shall be terminated automatically. The provisions hereof shall not be deemed to affect any other benefits which may be available to Superintendent, including but not limited to, those available under the applicable retirement program, health insurance, worker's compensation, standard District practices for the payment of accrued but unused leaves or otherwise.

In addition to standard district insurance, the District will provide a term life insurance policy for the length of time of this contract at a benefit rate of two (2) times the Superintendent's yearly base salary.

20. DISABILITY. Should Superintendent be unable to perform any or all his duties by reason of illness, accident, or other cause beyond his control, and said disability exists for a period longer than six months, the Board may in its discretion hire a temporary Superintendent; and if such disability continues, or said disability is permanent, irreparable, or of such nature as in the discretion of the Board to substantially and materially adversely affect the performance of this contract, the Board may, at its option, terminate this agreement; whereupon the respective duties, rights and obligations hereof shall terminate.

21. MORAL AND LEGAL CONDUCT. Superintendent shall fulfill all aspects of this contract in a legal, ethical and moral manner, any exception thereto being by mutual written consent of the Board and Superintendent. Failure to fulfill the obligations agreed to in this contract will be good and just cause for discharge as noted above, and will be reported by the Board to the appropriate state educational authorities.

24

22. **CERTIFICATE.** Pursuant to RCW 28A.400.010, the Board of Directors is solely responsible for determining the qualifications of its superintendent. It is agreed that the Board of Directors has determined that Dr. James Busey is fully qualified to be elected as superintendent of the District. Superintendent will furnish a certificate to act as a superintendent of schools in the State of Washington.

23. **DEFENSE AND HOLD HARMLESS.** The District agrees, as a further condition of Superintendent's employment contract, that it will defend, hold harmless and indemnify Superintendent from any and all demands, claims, suits, actions, damages, costs, charges and expenses, including court costs and attorneys' fees except as provided for under paragraph 18; provided, that the incident out of which such demands, claims, suits, actions, damages, costs, charges and expenses arise have occurred while Superintendent is acting within the scope of his employment and during the good faith performance of his contract. The District shall provide Superintendent with a legal defense provided that if a conflict exists between the legal position of Superintendent and the District, Superintendent may obtain independent counsel which fees thereof shall be indemnified by the District if Superintendent is entitled to a defense as provided above.

24. **LIMITATION.** Nothing in this contract shall authorize Superintendent to perform any act which, pursuant to the laws of the State of Washington, cannot be delegated by the Board to the Superintendent.

25. **GOVERNING LAW.** This contract has been executed in the State of Washington and shall be governed in accordance with the laws of the State of Washington in every respect and other applicable laws, rules and regulations. This contract is further governed by the Board's policies, procedures, rule and regulations as now or hereafter adopted. The parties agree that any dispute hereunder shall be exclusively resolved by submission to an arbitrator selected under and operating exclusively under the rules of the American Arbitration Association for the expedited resolution of disputes. The decision of the arbitrator shall be final and binding upon the parties and neither party shall have recourse to any court of law other than to challenge the jurisdiction or to enforce the decision of the arbitrator.

25

**IN WITNESS WHEREOF**, the parties have executed this contract in triplicate this _10_ th day of March 2010.

SUPERINTENDENT:                          BOARD OF DIRECTORS
                                         RICHLAND SCHOOL DISTRICT NO. 400

_____                    By _____
James Busey                              Richard Jansons, President

                                         By _____
                                         Heather Cleary, Vice President

                                         By _____
                                         Rick Donahoe, Member

                                         By _____
                                         Mary Guay, Member

                                         By _____
                                         Phyllis Strickler, Member

9

26

## ADDENDUM A-1 SUPERINTENDENT'S EMPLOYMENT CONTRACT
### (7/1/11-6/30/14)

THIS ADDENDUM is made and entered into as of the July 11, 2011 by and between the Board of Directors of Richland School District No. 400, hereinafter referred to as the "Board" and James P. Busey, hereinafter referred to as "Superintendent".

**Superintendent Address Update:** 1788 Meadow Hills Drive, Richland, WA  99352

**Effective Date of Addendum:** July 1, 2011

**2. Term:** Extended to 6/30/2014. All other terms and conditions of the original contract except as noted in addendum A-1.

**6. Superintendent Salary:** The Board shall pay to the Superintendent an annual salary of one hundred fifty six thousand eight hundred ten dollars ($156,810.00)* in the contract year 7/1/11 through 6/30/12 and future annual adjustments per contract.
* current $149,000 base
* medical $322.08/mo x 12 = $3,985
  * totals $152,985 + *2.5% per contract $3,825 = $156,810 (new base)
  * ✓ Subject to adjustments per other employees and groups
  * ✓ Each year of contract 2.5% increase, plus any COLA provided to other employee groups

**7.   District Travel:** The superintendent shall be paid $400 per month for district travel within Benton and Franklin Counties. Any travel outside of the above counties shall be reimbursed per mile from the District Office.

**8. Local Professional Activities:** e.g., United Way, Education Foundation, Rotary, Chambers of Commerce, Kiwanis
* dues/expenses

**9. Vacation:**    Twenty five (25) days per year/current language for accumulation and buy back at retirement...(reduction of eight (8) days...no annual buy back).

**11. Delete second paragraph.**

**16. Extra Activities...**equivalent to "44 days each year of employment"

Signed:

_(signature)_

Rick Jansons, President

_(signature)_

Heather Cleary, Vice President

_(signature)_

Phyllis Strickler, Board Director

_(signature)_

Mary Guay, Board Director

_(signature)_

Rick Donahoe, Board Director

Signed:

_(signature)_

James P. Busey, Superintendent

Date of signature: 7/11/11

ADDENDUM A.doc

Case 2:13-cv-05022-TOR    Document 1    Filed 02/25/13

## ADDENDUM A–2 SUPERINTENDENT'S EMPLOYMENT CONTRACT
### (7/1/12-6/30/15)

THIS ADDENDUM is made and entered into as of the March 27, 2012 by and between the Board of Directors of Richland School District No. 400, hereinafter referred to as the "Board" and James P. Busey, hereinafter referred to as "Superintendent".

**Effective Date of Addendum:** March 27, 2012

**2.  Term:**  Extended to 6/30/2015.  All other terms and conditions of the original contract including as noted in addendum A-1.

**6. Superintendent Salary:**  The Board shall pay to the Superintendent an annual salary of one hundred sixty thousand seven hundred thirty dollars ($160,730)* in the contract year 7/1/12 through 6/30/13 and future annual adjustments per contract.

> ✓  Subject to adjustments per other employees and groups
> ✓  Each year of contract 2.5% increase, plus any COLA provided to other employee groups

Signed:                                          Signed:

_____          _____
Rick Jansons, President                          James P. Busey, Superintendent

                                                 Date of signature: _____
_____
Heather Cleary, Vice President

_____
Phyllis Strickler, Board Director

_____
Mary Guay, Board Director

_____
Rick Donahoe, Board Director

ADDENDUM A2.doc

# EXHIBIT "B"

29

RETTIG
OSBORNE
FORGETTE
ATTORNEYS AT LAW

**FILE COPY**

**ATTORNEYS**
Diehl R. Rettig *(1943-2010)*
Stephen T. Osborne
François X. Forgette
Brian J. Iller
Cheryl R.G. Adamson
Stella Edens Pederson
G. Charley Bowers

**PARALEGALS**
Barbara J. Wilson

February 14, 2013

6725 W. Clearwater Ave.
Kennewick, WA 99336-1788

509-783-6154
509-783-0858 (fax)

Personal E-Mail:  bji@rettiglaw.com

Our File/Billing No.
12-339
7136.0001

Mr. Gregory L. Stevens
STEVENS CLAY & MANIX PS
421 W. Riverside Avenue, Suite 1575
Spokane, WA  99201-0409

*Via Email and USPS*

RE:   Busey v. Richland School District:
         Purported Termination Ineffective
         Notice to Preserve Electronically Stored Information

Dear Mr. Stevens:

First, please confirm that I am to communicate to the Richland School District ("RSD") Board through you on matters related to Dr. James Busey's employment and purported termination.   I will consider that my communications to you are effectively made to the RSD Board and administration unless you advise otherwise in writing.

Second, please consider this notice to RSD that Dr. Busey remains employed by the Richland School District under the terms of RCW 28A.405.300.  Dr. Busey was originally terminated in violation of that statute in December, 2012.  Ms. Cheryl Adamson of this firm was informed by you in December, 2012 that the Board had decided that Dr. Busey keeping his job "was not an option," or words to that effect.  Accordingly, the RSD Board had already made the decision to terminate Dr. Busey's employment as of that time.  RSD did not provide the notice required under RCW 28A.405.300 prior to taking that action, and did not provide Dr. Busey with the statutorily required opportunity for a pretermination hearing.  Accordingly, the provisions of the second paragraph of RCW 28A.405.300 apply to Dr. Busey:

<u>In the event any such notice or opportunity for hearing is not timely given</u>, or in the event cause for discharge or other adverse

y:\bji\clients\busey\stevens ltr 021413 bji edit.doc

*RETTIG OS... JRNE FORGETTE, LLP*

action is not established by a preponderance of the evidence at the hearing, <u>such employee shall not be discharged or otherwise adversely affected in his or her contract status for the causes stated in the original notice for the duration of his or her contract</u>.

(Underlining added.)

Accordingly, Dr. Busey was still employed by the district despite the illegal attempted termination in December, 2012.

RSD compounded its illegal and invalid December, 2012 termination by taking a second purported termination action on January 22, 2013. While it is obvious that the "investigation" undertaken after your December, 2012 statement to Ms. Adamson is only a *post-hoc* rationalization and a sham, <u>the District's letter dated January 30, 2013 (but not received by Dr. Busey until February 4th) once again fails to provide Dr. Busey with the opportunity for a pretermination hearing that is his right under RCW 28A.405.300</u>. Rather than offering Dr. Busey the statutorily required pretermination hearing, that letter states that he has already been discharged:

> Under the contract between yourself and the Richland School District you have the right to challenge <u>this discharge</u> through the arbitration proceeding set forth in your contract. In the alternative, you may have a statutory right of appeal.

(Underlining added.)

The phrase "this discharge" demonstrates that the district had already taken the termination action. This fact is made even clearer from the mention of a statutory right of appeal. There could be no "right of appeal" unless the final action has already been taken. Further, it is crystal clear from the minutes of the January 22, 2013 Board meeting that final action was purportedly taken terminating Dr. Busey when the Board approved a motion that:

> "THE BOARD TAKE ACTION TO REMOVE DR. JIM BUSEY AS SUPERINTENDENT OF THE RICHLAND SCHOOL DISTRICT

The Tri-City Herald reported that the RSD Board "fired" Dr. Busey by action taken on Tuesday, January 22, 2013. The Herald reported on January 23, 2013:

> Busey's termination is effective immediately. Jansons said Busey was dismissed for violating his contract and will not receive any settlement or extension of benefits.

y:\bji\clients\busey\stevens ltr 021413 bji edit.doc

*31*

Accordingly, the district's action of January 22, 2013 again violated Dr. Busey's right to a pretermination hearing. Accordingly, Dr. Busey remains employed under the terms of RCW 28A.405.300, quoted above, and none of the matters stated in the January 30, 2013 letter may be the basis for further action against Dr. Busey.

Therefore, please advise when Dr. Busey should return to the office to resume his duties. Until then, he is entitled to continued payment under the terms of his contract, as is his statutory right under RCW 28A.405.300. Any failure to pay will be grounds for suit, and Dr. Busey will be entitled to recover attorney's fees under RCW 49.48.030. In addition, Dr. Busey will be entitled to double damages pursuant to RCW 49.52.070 because RSD's illegal withholding of wages would be willful in light of the clear and unambiguous terms of RCW 28A.405.300.

It should further be noted that this statutory right to a pretermination hearing means Dr. Busey had a clearly established constitutionally protected interest in his employment that entitled him to a pretermination hearing under Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). The Board's action deprived him of that right, and the individual Board members are personally liable under 42 U.S.C. § 1983 for the violation of a clearly established constitutional right. See Stearns-Groseclose v. Chelan County Sheriff's Dept., Not Reported in F.Supp.2d, 2006 WL 195788 (E.D.Wash. 2006)(Sheriff is an individual policy maker who may be held liable for making a decision on an unlawful basis before conducting a background investigation that was allegedly "fixed"). Further, the January 30 letter on its face demonstrates that the board discriminated against Dr. Busey based on his marital status. Further, the fact that the female party to this consensual affair has not been terminated demonstrates discrimination based on sex. Indeed, RSD violated multiple statutes and regulations confirming Dr. Busey's right to be free of discrimination on such bases, including RCW 28A.400.310 (making RCW Ch. 49.60, the Washington Law Against Discrimination, applicable to certificated employees); RCW 28A.405.250, prohibiting discrimination based on "family relationship," and WAC 392-200-010 (prohibiting adverse impacts to employment opportunities based on sex). These are additional clear statutory rights which the District (and its Directors) violated with reckless disregard, creating additional individual liability for punitive damages under § 1983.

Third and finally, please consider this Dr. Busey's demand for RSD to immediately take all steps necessary to preserve all electronically stored information (ESI) that may be relevant to the disputes between the parties. Such ESI will include but not be limited to electronic versions of letters, memoranda, emails, voicemails, texts, and other instant messaging that:

y:\bji\clients\busey\stevens ltr 021413 bji edit.doc

32

***RETTIG OS. JRNE FORGETTE, LLP***

1. Might tend to prove or disprove any allegation made in RSD's January 30, 2013 letter;

2. Which discuss or relate to Dr. Busey's performance and activities as RSD superintendent;

3. Which discuss or relate to the investigations of Dr. Busey; or

4. Which discuss or relate to RSD's activities prior to hiring Dr. Busey, including but not limited to any and all background checks, sexual misconduct inquiries, recruitment, and interviews.

Nothing in this demand for preservation of ESI should be understood to diminish RSD's concurrent obligation to preserve documents, tangible things and other potentially relevant evidence that may be discoverable under all applicable state and federal court rules[1].

Also, please be advised that <u>ESI and other potentially relevant evidence must be preserved even if the District intends to assert attorney-client or work product privilege</u>. The intention to assert a privilege does not excuse failure to preserve ESI (or paper copies of such documents).

Please advise RSD to immediately initiate a litigation hold on all potentially relevant ESI, documents, and tangible things and to act diligently and in good faith to secure and audit compliance with that litigation hold. Please advise RSD to immediately suspend routine destruction of the above-described ESI and any other ESI related to Dr. Busey's employment and the attempted termination thereof. Please advise RSD to immediately identify and modify or suspend features of its information systems and devices that, in routine operation, operate to cause the loss of potentially relevant ESI. Examples of such features and operations include but are not limited to:

- Purging the contents of e-mail repositories by age, capacity or other criteria;
- Using data or media wiping, disposal, erasure or encryption utilities or devices;
- Overwriting, erasing, destroying or discarding backup media;
- Re-assigning, re-imaging or disposing of systems, servers, devices or media;
- Running antivirus or other programs effecting wholesale metadata

---

[1] The Federal Rules of Civil Procedure will apply to Dr. Busey's 42 U.S.C. § 1983 Civil Rights claims, under which Dr. Busey will seek punitive damages and attorney's fees.

y:\bji\clients\busey\stevens ltr 021413 bji edit.doc

alteration;
- Releasing or purging online storage repositories;
- Using metadata stripper utilities;
- Disabling server, packet or local instant messaging logging; and,
- Executing drive or file defragmentation or compression programs.

Please inform RSD that it should anticipate that its board members, officers, employees and others may seek to hide, destroy or alter ESI, and that it must act to prevent and guard against such actions. This is a risk especially when, as here, Board members have exposed themselves to personal liability. This is especially true where RSD machines were used for Internet access or personal communications, RSD should anticipate that users may seek to delete or destroy information they regard as personal, confidential or embarrassing, and in so doing, they may also delete or destroy potentially relevant ESI. This concern is not unique to RSD. It is simply conduct that occurs with such regularity that any custodian of ESI and their counsel must anticipate and guard against its occurrence.

Please also inform RSD that it must create and preserve all complete backup sets (including differentials and incrementals) containing e-mail and other potentially relevant ESI for all dates during Dr. Busey's recruitment, interview, background investigation, and employment, and from now until the termination of all disputes between RSD and Dr. Busey.

Please inform RSD that it must take affirmative steps to prevent anyone with access to its data, systems and archives from seeking to modify, destroy or hide ESI on network or local hard drives and on other media or devices (such as by deleting or overwriting files, using data shredding and overwriting applications, defragmentation, re-imaging, damaging or replacing media, encryption, compression, steganography or the like).

As an appropriate and cost-effective means of preservation, RSD should remove from service and securely sequester the systems, media and devices housing potentially relevant ESI, especially of the key persons identified below. In the event RSD deems it impractical to sequester systems, media and devices, we believe that the breadth of preservation required, coupled with the modest number of systems implicated, dictates that forensically sound imaging of the systems, media and devices of those named above is expedient and cost effective. As we anticipate the need for forensic examination of one or more of the systems and the presence of relevant evidence in forensically accessible areas of the drives, we demand that RSD employ forensically sound ESI preservation methods. Failure to use such methods poses a significant threat of evidence spoliation and data loss. "Forensically sound ESI preservation" means duplication of all data stored on the evidence media while employing a

y:\bji\clients\busey\stevens ltr 021413 bji edit.doc

*34*

*RETTIG OS. JRNE FORGETTE, LLP*

proper chain of custody and using tools and methods that make no changes to the evidence and support authentication of the duplicate as a true and complete bit-for-bit image of the original. The products of forensically sound duplication are called, inter alia, "bit stream images" or "clones" of the evidence media. A forensically sound preservation method guards against changes to metadata evidence and preserves all parts of the electronic evidence, including deleted evidence within "unallocated clusters" and "slack space."

<u>Be advised that a conventional copy, backup or "Ghosting" of a hard drive does not produce a forensically sound image</u> because it only captures active, unlocked data files and fails to preserve forensically significant data existing in, e.g., unallocated clusters and slack space.

With respect to the hard drives and storage devices of each of the key persons named below, demand is made that RSD immediately obtain, authenticate and preserve forensically sound images of the hard drives in any computer system (including portable and home computers) used by that person during the period from December 1, 2009 through the present, as well as recording and preserving the system time and date of each such computer, including meta data, of the district that may be relevant to this dispute as required under state and federal discovery rules (including but not limited to emails, voicemails, texts, recordings of board meetings, and draft minutes of board meetings.

Once obtained, each such forensically sound image should be labeled to identify the date of acquisition, the person or entity acquiring the image and the system and medium from which it was obtained. Each such image should be preserved without alteration and kept secure with proper chain of custody documentation.

RSD should anticipate that certain ESI, including but not limited to spreadsheets and databases, will be sought in the form or forms in which it is ordinarily maintained (i.e., native form). Accordingly, you should advise RSD to preserve ESI in such native forms, and that RSD should not employ methods to preserve ESI that remove or degrade the ability to search the ESI by electronic means or that make it difficult or burdensome to access or use the information. RSD should additionally refrain from actions that shift ESI from reasonably accessible media and forms to less accessible media and forms if the effect of such actions is to make such ESI less reasonably accessible.

RSD should further anticipate the need to disclose and produce system and application metadata and act to preserve it. System metadata is information describing the history and characteristics of other ESI. This information is typically associated with tracking or managing an electronic file and often includes data reflecting a file's name, size, custodian, location and dates of

y:\bji\clients\busey\stevens ltr 021413 bji edit.doc

35

creation and last modification or access. Application metadata is information automatically included or embedded in electronic files, but which may not be apparent to a user, including deleted content, draft language, commentary, collaboration and distribution data and dates of creation and printing. For electronic mail, metadata includes all header routing data and Base 64 encoded attachment data, in addition to the To, From, Subject, Received Date, CC, and BCC fields. Metadata may be overwritten or corrupted by careless handling or improper preservation, including by moving, copying or examining the contents of files.

Please advise RSD that with respect to servers used to manage e-mail (e.g., Microsoft Exchange, Lotus Domino) and network storage (often called a "network share"), the complete contents of each user's network share and e-mail account should be preserved. There are several ways to preserve the contents of a server. If RSD is uncertain whether the preservation method it plans to employ is one that we will accept as sufficient, please immediately contact me.

Please also advise RSD that it must also determine if any home (personal), portable systems or devices of its employees, officers, board members, attorneys, agents, representatives and contractors may contain potentially relevant data. Dr. Busey informs me that the Directors do not have dedicated RSD emails but use personal email addresses and their work email addresses. Accordingly, RSD must immediately advise each Director to immediately take the steps identified herein to preserve all ESI on those computers, and that any destruction of ESI evidence would be improper and illegal. <u>Each and every computer, cell phone, tablet, and other device that is used to make communications regarding Dr. Busey contains ESI and will be subject to discovery. All ESI on such personally owned devices must be preserved, or the individuals will have committed destruction (spoliation) of evidence.</u> Further, to the extent that any other persons have sent or received potentially relevant e-mails or created or reviewed potentially relevant documents away from the office, RSD must preserve the contents of systems, devices and media used for these purposes (including not only potentially relevant data from portable and home computers, but also from portable thumb drives, CDR/DVD-R disks and the user's PDA, smart phone, voice mailbox or other forms of ESI storage). Similarly, if such persons used online or browser-based e-mail accounts or services (such as Gmail, AOL, Yahoo Mail or the like) to send or receive potentially relevant messages and attachments, the contents of these account mailboxes (including Sent, Deleted and Archived Message folders) should be preserved.

Dr. Busey further informs me that RSD has administrators who have outside employment who perform work for that outside employment on RSD

computers.  Due to the nature of some of the allegations against Dr. Busey regarding personal usage of RSD equipment, <u>all ESI of all RSD employees who use equipment (including computers) for non-RSD purposes must be preserved</u>.

In addition, RSD must preserve documents and other tangible items that may be required to access, interpret or search potentially relevant ESI, including logs, control sheets, specifications, indices, naming protocols, file lists, network diagrams, flow charts, instruction sheets, data entry forms, abbreviation keys, user ID and password rosters and the like.  RSD must preserve passwords, keys and other authenticators required to access encrypted files or run applications, along with the installation disks, user manuals and license keys for applications required to access the ESI.  RSD must preserve cabling, drivers and hardware, other than a standard 3.5" floppy disk drive or standard CD or DVD optical disk drive, if needed to access or interpret media on which ESI is stored. This includes tape drives, bar code readers, Zip drives and other legacy or proprietary devices.

<u>Please also advise RSD that because paper or hard copies do not preserve electronic searchability or metadata, they are not an adequate substitute for, or cumulative of, electronically stored versions of ESI documents. If information exists in both, electronic and paper forms, RSD must preserve both forms.</u>

Please also advise RSD that its preservation obligation extends beyond ESI in its direct care, possession or custody and includes ESI in the custody of others that is subject to RSD's direction or control. Accordingly, you must notify any current or former agent, consultant, attorney, employee, custodian and contractor in possession of potentially relevant ESI to preserve such ESI to the full extent of RSD's obligation to do so, and RSD must take reasonable steps to secure their compliance.

The foregoing applies to ESI for all potential key witnesses, including but not limited to the following:

    Jim Busey
    Rich Puryear
    All RSD Board members
    Galt Pettett
    Greg Stevens
    Alan Keys
    Gene Sharratt
    Tony Howard
    Nancy Mayer
    Debbie Hamilton

**RETTIG OS.  RNE FORGETTE, LLP**

       Susie Oram
       Jerri Morrow
       Bobbie Butters
       Kara Wing
       Vicki Swisher
       Regina Begalka
       Mike Hansen
       Peggy Pilger
       Katherine Cort

In addition to those named individuals, <u>RSD should preserve ESI as to each and every person who contacted RSD or was contacted by RSD regarding the affair, including but not limited to all persons who were interviewed in the course of any of the investigations of the matter.</u>  We reserve the right to identify additional persons specifically, but our failure to identify them at this time will not excuse the failure to preserve ESI when RSD knows that a person has knowledge potentially relevant to this dispute.

Also, please specifically ensure that RSD takes steps to preserve all audio recordings and video recordings of all board meetings, including especially but not limited to the January 22, 2013 board meeting at which the second termination decision was made.

We are desirous of working with you to agree upon an acceptable protocol for forensically sound preservation and can supply a suitable protocol if you will furnish an inventory and description of the systems and media to be preserved. Alternatively, if you promptly disclose the preservation protocol that RSD intends to employ, perhaps we can identify any points of disagreement and resolve them. A successful and compliant ESI preservation effort requires expertise. If you do not currently have such expertise at your disposal, we urge you to engage the services of an expert in electronic evidence and computer forensics. Perhaps our respective experts can work cooperatively to secure a balance between evidence preservation and burden that's fair to both sides and acceptable to federal and state courts.

I'm available to discuss reasonable preservation steps; however, <u>RSD should not defer preservation steps pending such discussions because ESI may be lost or corrupted as a consequence of delay</u>. Should RSD's failure to immediately take action to preserve potentially relevant evidence result in the corruption, loss or delay in production of evidence to which we are entitled, such failure would constitute spoliation of evidence, and we will not hesitate to seek sanctions.

Normally, I would not spend so much time addressing a party's duty to

y:\bji\clients\busey\stevens ltr 021413 bji edit.doc

*38*

preserve evidence. However, I am greatly concerned by RSD's proposed response to a Washington Public Records Act (PRA) request by the TriCity Herald's Ty Beaver. That proposed response includes none of the documentation created during the original investigation of the affair in November, 2012. Dr. Busey knows there are records of that investigation that are not being produced. For example, Dr. Busey knows that Mr. Galt Pettett had many hand written notes of his interviews during the original investigation which are required to be preserved by the PRA, by the rules of evidence, and by common sense. Those notes have not been identified or produced by RSD in the proposed response to the Herald's request. Pettett made handwritten notes during his initial investigation of the subject when he interviewed Dr. Busey at approximately 3:00 p.m. on November 8, 2012. Those notes have not been identified or included. Another example is that Tony Howard met with Debbie Hamilton on November 21, 2012 at 2:00 p.m. at Starbucks on George Washington Way, and had a written list of questions for her. That list (and any notes made of Ms. Hamilton's answers) has not been provided or identified. A third example is that Dr. Busey emailed board Chair Rick Jansons and asked him to meet with him prior to the special board meeting that began at 5:00 PM on November 8, 2012. This has not been provided or identified either. Dr. Busey forwarded that email to Galt Pettett so Mr. Pettett would know that Dr. Busey had made contact with Mr. Jansons as Mr. Pettett had requested. That forwarded email has not been provided or identified. The PRA requires RSD to preserve all of these records, and to at least identify them on a privilege or exemption log (and probably to produce them in redacted form) in response to the TriCity Herald's PRA request. See RCW 42.56.210; Sanders v. State, 169 Wash.2d 827, 240 P.3d 120 (2010); Rental Housing Ass'n of Puget Sound v. City of Des Moines, 165 Wash.2d 525, 199 P.3d 393 (2009). Indeed, Dr. Busey has made substantially identical requests in response to which RSD should have produced those records long ago.

Accordingly, it appears that RSD may have already destroyed evidence. At the very least, it is violating the PRA. Therefore, please immediately notify RSD of its obligation to preserve evidence, including ESI, as outlined above.

Very truly yours,

BRIAN J. ILLER

BJI/cf
cc: Client

y:\bji\clients\busey\stevens ltr 021413 bji edit.doc

*39*

# EXHIBIT "C"

*40*

**Becky Harris**

| | |
|---|---|
| **From:** | Cheryl Adamson |
| **Sent:** | Monday, February 04, 2013 5:01 PM |
| **To:** | Becky Harris |
| **Subject:** | FW: |
| **Attachments:** | Busey Notice of Discharge 2013-01-30.pdf |

Please print.

*Cheryl R. G. Adamson*
*Rettig Osborne Forgette, LLP*
*6725 W. Clearwater Avenue*
*Kennewick, WA 99336-1788*
*Phone - (509) 783-6154*
*Fax - (509) 783-0858*
*e-mail - cheryl.adamson@rettiglaw.com*

*This e-mail message and its attachment are private, confidential, attorney work product and subject to the attorney-client communication privilege. It is intended solely for the use of the individual named above. If you are not the intended recipient, or the person responsible to deliver it to the intended recipient, be advised that the unauthorized use, disclosure, dissemination, distribution, copying, or the taking of any action in reliance on the contents of this information is strictly prohibited. If you have received this e-mail transmission in error, please immediately notify us by telephone (509) 783-6154, by reply e-mail, and then delete and/or destroy the original and all copies of this e-mail message.*

**From:** Greg Stevens [mailto:GStevens@stevensclay.org]
**Sent:** Monday, February 04, 2013 4:41 PM
**To:** Cheryl Adamson
**Subject:**

Cheryl:

Attached please find the notice of discharge to Mr. Busey.

Greg

Gregory L. Stevens
STEVENS~CLAY~MANIX, P.S.
421 W. Riverside Avenue, Suite 1575
Paulsen Center
Spokane, Washington 99201
Phone: 509.838.8330
Facsimile: 509.623.2131
E-mail: gstevens@stevensclay.org

This e-mail and any attachments to it are for viewing by the intended recipient only. It/they is/are protected by the attorney-client privilege and the work product doctrine. Any delivery to a person other than the intended recipient is inadvertent and shall not constitute a waiver of any attorney-client privilege or work product doctrine protections. If this e-mail and/or any attachment/s to it is/are received by a person other than the intended recipient, it/they is/are not to be read and is/are to be discarded. In such event, please immediately report your receipt to the sender by e-mail reply or by telephone call, made collect if long distance, to the number set forth above.

41



# RICHLAND
## School District

January 30, 2013

### VIA CERTIFIED AND REGULAR U.S. MAIL

Mr. James Busey
250 Gage Boulevard, Apt. 3046
Richland, Washington 99352

**RE:** **Notice of Probable Cause for Discharge and Nonrenewal Pursuant to RCW 28A.405.210 and RCW 28A.405.300**

Dear Mr. Busey:

As you know on December 10, 2012 you were placed on paid administrative leave pending an investigation into allegations of misconduct by you while you were employed as Superintendent of the Richland School District. As part of this investigation a School District designated investigator has interviewed various individuals regarding these allegations and your role as Superintendent. In addition, the Board has heard from numerous other administrative staff and employees regarding these matters. Finally, you have been interviewed regarding these allegations on several occasions and you have been provided notice of the allegations against you as well as an opportunity to respond.

Based on the School Board's careful review of all information, including comments by you, the Board concludes that you have engaged in the following unprofessional conduct which has materially and substantially affected your ability to perform the duties of Superintendent of schools. Specifically the Board finds that you have engaged in the following:

1.     You have engaged in a long-standing extramarital sexual affair with a subordinate employee of the Richland School District. Such conduct violates the contractual provisions of your employment contract with the District and constitutes unethical and immoral conduct.

2.     You engaged in inappropriate and unprofessional conduct with a female professional who you met while she was acting as a consultant at one of our schools. You met her in this role and pursued a romantic relationship with her while you were married.

3.     You used School District equipment for inappropriate personal reasons including pursuit of your inappropriate extramarital affair with a School District staff member.

42

4.    Your conduct and affair with another School District employee caused disruption and unnecessary stress at the employee's work site, an elementary school in the District.

5.    You threatened the School District that if they did not reinstate you or pay you the entire amount of your contract you would go to the press and take action to cause deliberate harm to the School District.

6.    You recently informed the press that you believed that the upcoming bond was too high without ever sharing this "opinion" with the School Board.

7.    Your conduct creates the appearance of a conflict of interest and exposes the School District to potential liability.

Based on the above, it is my conclusion that the above-referenced conduct, individually and in the aggregate, is unprofessional, inappropriate, based on substantial poor judgment, and is a flagrant disregard of generally recognized professional standards. I also believe your conduct lacks any positive educational aspect or legitimate professional purpose. Your conduct has a material and substantial adverse affect on your ability to deal with students, parents, the community and other staff members. Your conduct has seriously impaired your ability to function as an effective Superintendent of schools. Your conduct is inconsistent with the message you conveyed to staff as to the professional conduct expected of School District employees and has seriously undermined the trust necessary between your position as Superintendent of schools and the School Board, administrators, and other staff.

I therefore conclude that probable cause exists for your discharge from employment with the Richland School District. Under the contract between yourself and the Richland School District you have the right to challenge this discharge through the arbitration proceeding set forth in your contract. In the alternative, you may have a statutory right of appeal. I suggest you consult with your attorney.

Sincerely,

Richard Jansons
Richland School Board

cc:    Personnel File

43