UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JAMES BUSEY, an individual,<br><br>       Plaintiff,<br><br>vs.<br><br>RICHLAND SCHOOL DISTRICT;<br>RICHARD JANSONS; HEATHER<br>CLEARY; MARY GUAY; RICK<br>DONAHOE; and PHYLLIS<br>STRICKLER,<br><br>       Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

No. 13-CV-5022-TOR
June 20, 2013
Spokane, Washington

Transcript of:
Telephonic Motion Hearing

BEFORE THE HONORABLE THOMAS O. RICE
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiff:       Brian J. Iller, Attorney at Law
                         Rettig Osborne Forgette O'Donnell
                         Iller & Adamson, LLP
                         6725 W. Clearwater Avenue
                         Kennewick, WA  99336

For the Defendants:      Michael E. McFarland, Attorney at Law
                         Evans, Craven & Lackie, P.S.
                         818 W. Riverside, Suite 250
                         Spokane, WA  99201-0910

Reported By:             Debra Kinney Clark, RPR, CSR
                         United States District Courthouse
                         P.O. Box 700
                         Spokane, WA 99210
                         (509) 458-3433

Proceedings reported by mechanical stenography; transcript
produced by computer-aided transcription.

1     (June 20, 2013; 9:20 a.m.)

2         THE COURTROOM DEPUTY:  The matter before the Court

3 is <u>James Busey v. Richland School District</u>, Case

4 No. 13-CV-5022-TOR.  Time set for motion hearing.

5     Counsel, please state your presence for the Court and

6 record, beginning with the plaintiff.

7         MR. ILLER:  Brian Iller on behalf of the plaintiff.

8         MR. McFARLAND:  This is Mick McFarland.  I represent

9 all of the defendants.

10         THE COURT:  Good morning, Counsel.  This is

11 Judge Rice.

12     I've read the parties' submissions and am familiar with the

13 case.  This is the defendants' motion.  So, Mr. McFarland, I'll

14 hear from you first.

15         MR. McFARLAND:  Thank you, Your Honor.

16     May it please the Court, the sole issue before the Court

17 today is whether or not to stay the proceedings and compel the

18 parties to attend an arbitration.  And for the reasons set forth

19 in the briefing and as I will briefly discuss today, I believe

20 the easy answer to that is yes.

21     But before I talk about the specifics of this case, I want

22 to quickly run through, almost in bullet-point fashion, some of

23 the general principles about arbitrability under the FAA, the

24 first of which is that our Supreme Court has made it very clear

25 on numerous occasions that the FAA creates a strong policy

favoring arbitration.  The Supreme Court has also made it very clear that courts, quote, rigorously enforce arbitration provisions.  In fact, Your Honor, the policy favoring arbitration is so strong that the FAA provides for an immediate interlocutory appeal of a decision denying a motion to compel arbitration, whereas orders granting arbitration are not immediately appealable.

Some of the other general propositions that both the Supreme Court and the Ninth Circuit make clear is that the standard for demonstrating arbitrability is not high.  Our courts -- our Supreme Court has also said, quote, absent unmistakably clear language to the contrary, arbitration should be ordered, unless it can be said that the arbitration clause is not susceptible to an interpretation that covers the asserted dispute.

The Ninth Circuit, in the case of Simula, which is S-i-m-u-l-a, v. Autoliv, at 175 F.3d 716, has said:  "Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  The court further said that to require arbitration, factual allegations need only, quote, touch matters, close quote, covered by the contract containing the arbitration provision.  And that's the standard, Your Honor.  Do the factual allegations of the claims being pursued touch on matters of the contract?  And if the answer to that is yes, then arbitration is required.

1    Now, in Mr. Busey's -- or -- Dr. Busey's case, his

2 employment contract states that the parties agree that, quote,

3 any dispute hereunder shall be resolved by arbitration.  So the

4 analysis before the Court I think is fairly straightforward and

5 easy, and that is:  Do the claims that Mr. -- or -- Dr. Busey is

6 pursuing, quote, touch upon matters covered under the contract?

7    And secondly, as I will discuss, more recent cases have

8 said that arbitration is required if, in order to prosecute a

9 claim, it is necessary to interpret or rely upon the contract in

10 question.  If the answer to that is yes, then arbitration is

11 required.

12    What the courts have made clear is that independent tort

13 claims are not subject to arbitration.  So, for example, in this

14 case, if one of the school board members had defamed Dr. Busey,

15 that would be a claim that Dr. Busey could prosecute without

16 reference to or reliance upon the terms of his contract; and

17 therefore, it would not be arbitrable.  In this case, the claims

18 that Dr. Busey is pursuing are clearly based upon his employment

19 contract.

20    Start with the proposition that Dr. Busey attached a copy

21 of his employment contract with the district to the complaint.

22 Then within the complaint, he alleges that there was a sham

23 investigation that led to his discharge and that the stated

24 bases for his termination were pretextual.  More importantly, he

25 claims that he remains employed and entitled to compensation

1  under his contract with the district.  He asks the Court for

2  reinstatement pursuant to his contract and payment of his wages

3  pursuant to his contract.

4      I would direct the Court's attention in particular to

5  Paragraphs 2.49 through 2.51 of Dr. Busey's complaint, as he

6  states in those paragraphs clearly and unequivocally that he is

7  pursuing claims based upon his contract.  For example, in just

8  one of those paragraphs, he says, in 2.49:  "Busey is, under the

9  terms of RCW 28A.405.300, still employed by RSD and, therefore,

10 still entitled to compensation as set forth in his Contract

11 throughout the term of that Contract, which ends on June 30th,

12 2015."

13     I think the easiest way to analyze whether or not

14 Dr. Busey's claims touch upon, rely upon, or need interpretation

15 of the contract to proceed is to picture this case before a jury

16 and ask:  How could Dr. Busey present this case to a jury

17 without reference to or reliance upon the contract?  And if he

18 can't, then the contract -- or -- then the claim is arbitrable.

19     I would submit to Your Honor that there is not a claim in

20 that complaint that would not require Dr. Busey, at trial, to

21 rely upon the contract.  How can he argue that his termination

22 was pretextual without reference to the contract and what bases

23 the school district had, pursuant to that contract, to terminate

24 him?  How does he establish damages at trial without reference

25 to and reliance upon the contract?  How would he establish what

his process or his due process rights are without reliance upon the contract?  How does he establish the school district's basis for the termination was not just improper without reliance upon the contract?

There is simply no argument, Your Honor, that can be made that Dr. Busey's contract is not at the heart of all of his allegations.  Stated very simply, without the contract, there would be no employment; and with no employment, there would be no cause of action.

Now, Dr. Busey argues that it is not the contract that gives him the procedural due process rights, but, instead, it is RCW 28A.405.300 that provides him relief in this case.  In fact, I think Dr. Busey references that provision ten different times in this contract -- or -- in this complaint.  He has cited at length that -- or -- in full that statutory provision in Paragraph 2.30 of his complaint, which is on Page 8 of the complaint; and I would invite the Court to read that statutory provision because what that statutory provision provides is the notice and hearing process to "determine whether or not there is sufficient cause or causes for his or her discharge or other adverse action against his or her contract status."

Dr. Busey cannot proceed under RCW 28 -- or -- under an argument based upon RCW 28A.405.300 without referencing how the alleged due process violations were contrary or adverse to his contract status.  If you read the last paragraph of that

1  provision as highlighted in Dr. Busey's complaint, it states:

2  "In the event any such notice or opportunity for hearing is not

3  timely given, or in the event cause for discharge or other

4  adverse action is not established by a preponderance of the

5  evidence at the hearing, such employee shall not be discharged

6  or otherwise adversely affected in his or her contract status

7  for the causes stated in the original notice for the duration of

8  his or her contract."  The provision relied upon by Dr. Busey

9  provides for notice and an opportunity to be heard to protect

10 his contract status.

11      Now, Dr. Busey relies primarily on three cases, which he

12 argues mandate a denial of his -- of the district's motion.  The

13 first one is Mediterranean Enterprises, which has a clause -- an

14 arbitration clause for claims "arising hereunder."  That case

15 actually, Your Honor, supports the district's proposition

16 because the case states that the arbitration provision governs

17 claims "relating to the interpretation and performance of the

18 contract itself."  That is the standard imposed by the court in

19 the Mediterranean case.  And in that case, the court went

20 through all five of the claims before it and found that three of

21 the claims, Claims 1, 2, and 4, were, in fact, arbitrable; and

22 two of the claims were not arbitrable because those claims could

23 be governed without the interpretation of the contract and

24 without having to determine whether the contract itself was

25 performed.

1     The Tracer Research Corporation case, the second one relied

2  upon by Dr. Busey, likewise states that arbitration clauses

3  should be enforced when the cause of action requires, quote,

4  interpretation of the contract.  In that case, the Tracer case,

5  the issue was whether a trade secret claim could be -- or -- was

6  subject to the arbitration provision of the contract; and the

7  court found no because it was an "independent wrong" that could

8  be prosecuted without interpretation of the contract.

9     Similarly, the last case relied upon by Dr. Busey is the

10  Cape Flattery v. Titan case; and that case cited to the

11  Mediterranean and Tracer cases and simply said that claims that

12  could be prosecuted without an open, quote, interpretation of

13  any clause of the contract, close quote, were not subject to

14  arbitration.  The court specifically noted in that case that the

15  Oil Pollution Act claim which was before it did, quote, not turn

16  on Titan's performance under the contract.  That is the exactly

17  the district's position in this case, Your Honor, because Mr. --

18  or -- excuse me -- Dr. Busey simply cannot prosecute any of his

19  claims without reliance upon and interpretation of that

20  contract.

21     Whether or not the district had just and sufficient cause

22  to terminate Dr. Busey's employment is something that

23  arbitrators routinely, commonly handle and should do so in this

24  case because of the strong federal policy requiring strict

25  compliance with arbitration provisions.

1    Unless the Court has any questions, I have nothing further

2  at this time.

3         THE COURT:  Mr. McFarland, the Court's concerned with

4  the very limiting nature of the phrase used in the contract,

5  which is "arising under" -- let me see if I can find that --

6  "any dispute hereunder" -- which has been interpreted by the

7  Ninth Circuit very narrowly.  What do you have to say about

8  that, that limiting -- you know.  A different way of saying

9  that, they could have said the parties agree that any employment

10 dispute or any dispute arising while Dr. Busey was employed

11 would be resolved by arbitration.  But it didn't.  It limited it

12 only to disputes hereunder or specifically under the contract

13 itself, rather than the entire employment relationship.

14        MR. McFARLAND:  Yes.  I have two responses to that,

15 Your Honor, the first of which is:  I don't believe that the

16 proper analysis is whether or not the arbitration provision can

17 be categorized as broad or narrow.  Under both broad and narrow

18 arbitration clauses, the analysis comes back to whether or not

19 the claim can be prosecuted without interpretation of or

20 reliance on the contract, regardless of the language of the

21 arbitration provision.  And so even under the most narrow of

22 arbitration clauses, if the claim before the Court is one that

23 requires, at trial, reliance upon and interpretation of that

24 contract, it is subject to arbitration.

25     In this case, as my second response to Your Honor, the

1  claims made by Dr. Busey do, in fact -- or -- are, in fact,

2  disputes under the contract because he cannot pursue any of his

3  claims without the contract being the basis for those claims.

4  Whether he identifies those as statutory claims or, as he did in

5  his complaint, bases some of his claims and his damages upon the

6  contract, those claims arise under the contract and therefore

7  are arbitrable.

8          THE COURT:  All right.  Thank you.

9      Mr. Iller, I'll hear from you.

10         MR. ILLER:  Thank you, Your Honor.

11     This case is governed by the Mediterranean, Tracer, and

12 Cape Flattery line of cases.  As to the arbitration clause

13 language used, those three cases are exactly and precisely on

14 point.  And under those cases, the Ninth Circuit courts, both

15 the Court of Appeals and the district courts, have rejected each

16 and every position forwarded by the Richland School District in

17 this case.

18     All the Richland School District has demonstrated and

19 continues to argue ad nauseam is that but for the contract

20 between the parties, these claims would not have arisen.  Tracer

21 rejected that argument.

22     They tried to argue that -- boy.  Their defense is going to

23 be that the -- Dr. Busey breached the contract.  Well, that's

24 been rejected in the court cases that are cited in Plaintiff

25 Busey's materials, not the least of which is the Zoran

1  Corporation case and the Wireless Warehouse case.  But the most
2  basic problem with the Richland School District's position in
3  this case is its reliance -- in oral argument only, I would
4  note -- on this "touches upon" language, citing Simula.  And
5  they made this argument in the first oral argument on this
6  issue.  I didn't see Simula cited in the briefs.  I didn't see
7  "touched upon" the contract language discussed in the briefs.
8  So I went and looked it up.  And the Simula case is a "relating
9  to" arbitration clause.  It's not an "arising hereunder" or
10  "arising under" arbitration clause.

11      So Simula actually distinguished Mediterranean and Tracer
12  at Page 720 -- 175 F.3d, Page 720 -- as follows, and I quote:
13  Simula cites both Mediterranean Enter. and Tracer Research Corp.
14  "to support its contention that the disputed arbitration clause
15  should be narrowly construed.  Neither of these cases, however,
16  controls the language in the present clause:  Mediterranean
17  Enter. interpreted a clause providing for any disputes 'arising
18  hereunder,' see 708 F.2d at 1464, and Tracer Research involved
19  an arbitration clause providing for arbitration of claims
20  'arising out of' the agreement . . . .  Such language is
21  considerably more narrow in scope than the language at issue
22  here."  The actual language -- I'm sorry -- in Simula was "in
23  connection with."  So, once again, the very case that RSD cites
24  distinguishes the two cases that -- in which the contract used
25  precisely the language that the Richland School District put

into Dr. Busey's contract.

Now, we know from Mediterranean, Tracer, and Cape Flattery four propositions. First, "arising hereunder" has the same meaning as "arising under." That's what the Mediterranean court said. Second, "arising hereunder" or the legally identical "arising under" is a narrow arbitration clause. All three cases say that. Under such narrow arbitration clauses, a mere "but for" relationship to the contract is not a basis for arbitration. That's Tracer. Under such narrow arbitration clauses, the only claims that are subject to arbitration are claims that relate to the interpretation and performance of the contract itself. That's what Mediterranean held. It's still good law, most recently cited in March, I believe.

Busey's primary claim here is the Loudermill due process claim. Under Loudermill, a public employee has a constitutionally protected property right and, based on state law, may have a procedural due process right to a pre-termination hearing before that right can be taken. Here, under Washington law, it is absolutely crystal clear under the statute that's been discussed that Busey does have a right to a pre-termination hearing; and his claim is that that right was violated.

Now, absolutely, 100 percent, those claims are -- do arise out of the contract. They are then in connection with the contract. They wouldn't exist but for the contract. But they

1  don't arise hereunder the contract.  And the reason we know that

2  is because Dr. Busey does not have to prove that he did not

3  breach his contract in order to recover under the Loudermill

4  theory because it's a procedural due process right.  So -- and

5  that's the importance of the very section of the state statute

6  that Mr. McFarland quoted.  That right is so important under

7  state law, the right to a pre-termination hearing, that the

8  statute itself says:  Gosh.  If you don't get a pre-termination

9  hearing or at least an opportunity for a pre-termination

10  hearing, then whatever causes the district has cannot be used

11  against you.  So Dr. Busey has the right to recover under

12  Loudermill for the violation of his procedural due process

13  rights whether or not the contract was violated.  So --

14      One other item I'd like to mention, because it's stated in

15  the school district's reply brief -- they don't argue it here,

16  and I think they've recognized that it's incorrect.  In their

17  reply brief, they argued that the Cape Flattery court

18  distinguished or mentioned or noted that the clauses in

19  Mediterranean and Tracer did not include the word "any."  But

20  that's just not true.  And they cite Page 922 of the

21  Cape Flattery case.  Each and every one of these arbitration

22  provisions -- Mediterranean, Tracer, and Cape Flattery -- all

23  include the term "any."  And as Judge Shea pointed out, "any"

24  doesn't expand what is included in the category of claims

25  "arising hereunder."  So I'm glad to see that they've

1  acknowledged that that argument is wrong.  But I just wanted to

2  make sure that the Court was aware that that argument cannot be

3  supported.

4      So Dr. Busey's position can, I think, be best stated by

5  reference to what the court said in Wireless Warehouse v. Boost

6  Mobile, cited in our reply brief -- or -- excuse me -- our brief

7  in opposition.  There, that court said:  "The Court is mindful

8  of the presumption in favor of arbitrability, but it may not

9  'ignore the unmistakable limits' of the parties' contracted-for

10 arbitration clause."  It cites Zoran.  It cites Tracer.  It

11 cites Mediterranean Enterprises.

12     Then it says, quoting Zoran:  "'Given the clarity of Ninth

13 Circuit (case) law requiring the expansive application of

14 arbitration agreements using any one of a familiar set of broad

15 phrases, parties to an agreement need only employ such phrases

16 to ensure the arbitrability of all claims arising from their

17 relationship or a particular aspect thereof,'" citing Zoran.

18     The Wireless court concludes:  "The parties in this case

19 agreed instead to a narrow arbitration clause.  As such, the

20 Court must effectuate the parties' intent and find Plaintiff's

21 claims outside the scope of the arbitration requirement."

22     In this case, "but for" causation exists.  But these claims

23 do not "arise hereunder" the contract between the parties.  The

24 motion must be denied.  Thank you.

25          THE COURT:  Thank you.

1    Mr. McFarland, I'll give you another minute in rebuttal.

2         MR. McFARLAND:  Thank you, Your Honor.

3    I'm going to go straight to the Mediterranean Enterprise

4 case, and I think it answers your question about narrow

5 arbitration provisions.  In that case, the court stated that it

6 had, quote, no difficulty finding that the phrase "arising

7 hereunder" is intended to cover a much narrower scope of the

8 dispute.  And the court went on to say:  "*i.e.,* only those

9 relating to the interpretation and performance of the contract

10 itself."  What the law is in this circuit is that under the

11 narrow -- or -- under any narrow arbitration clause, claims that

12 are -- that relate to the interpretation and performance of the

13 contract itself have to be arbitrated.

14    Now, Counsel said that the heart of Mr. -- or --

15 Dr. Busey's claim is his Loudermill due process rights.  The --

16 in order to establish any Loudermill due process rights,

17 Dr. Busey has to have a property right.  His property right in

18 this case is the contract.  He has no procedural due process

19 rights outside and separate and apart from that contract.  He

20 cannot pursue a due process claim without interpretation of and

21 reliance upon and an examination of the perform -- his

22 performance under that contract.

23    Lastly, Your Honor, I would refer the Court to the Madrid

24 case cited in the district's briefing.  It is a trial court

25 decision, but it is on all four squares.  The arbitration

1  provision in that case covered, quote, any disputes arising
2  under the terms of the contract of the superintendent that had
3  been terminated from the school district.  And the court
4  concluded that all of those employment/performance-related
5  claims, including discrimination claims, were subject to the
6  arbitration provision of the contract.  And on behalf of my
7  client, I would ask that the Court find the same in this case.
8          THE COURT:  All right.  Counsel, thank you for your
9  oral argument and being available by telephone to present this
10 matter to the Court.  I will go back and look at the briefs some
11 more and have a written decision out shortly.
12         MR. McFARLAND:  Thank you, Your Honor.
13         MR. ILLER:  Thank you, Your Honor.
14     (The proceedings recessed at 9:50 a.m.)
15
16
17
18
19
20
21
22
23
24
25

C E R T I F I C A T E

       I, DEBRA KINNEY CLARK, do hereby certify:

       That I am an Official Court Reporter for the United States District Court at the Eastern District of Washington;

       That the foregoing proceedings were taken on the date and at the time and place as shown on the first page hereto; and

       That the foregoing proceedings are a full, true and accurate transcription of the requested proceedings, duly transcribed by me or under my direction.

       I do further certify that I am not a relative of, employee of, or counsel for any of said parties, or otherwise interested in the event of said proceedings.

       DATED this 12th day of August, 2013.


                    /s/Debra Kinney Clark

                    Official Court Reporter
                    United States District Court
                    Eastern District of Washington