UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JAMES BUSEY, | ) Case No. CV-13-5022-EFS |
| | ) |
| Plaintiff, | ) May 17, 2013, P.M. |
| | ) Richland, Washington |
| vs. | ) |
| | ) Motion Hearing |
| RICHLAND SCHOOL DISTRICT, et al., | ) |
| | ) Pages 1 - 25 |
| | ) |
| Defendants. | ) |

BEFORE THE HONORABLE EDWARD F. SHEA
SENIOR UNITED STATES DISTRICT COURT JUDGE

APPEARANCES:

For the Plaintiff:             Mr. Brian J. Iller
                              Attorney at Law
                              6725 West Clearwater Avenue
                              Kennewick, Washington 99336

For the Defendant:            Mr. Michael E. McFarland, Jr.
                              Attorney at Law
                              818 West Riverside
                              Suite 250
                              Spokane, Washington 99201-0910

Official Court Reporter:      Ronelle F. Corbey, #2968
                              United States District Courthouse
                              P.O. Box 700
                              Spokane, Washington 99210
                              (509) 458-5283

Proceedings reported by mechanical stenography; transcript
produced by computer-aided transcription.

MOTION HEARING - MAY 17, 2013
BY MR. McFARLAND

1        (Court convened on May 17, 2013, at 1:03 p.m.)

2            THE COURT:  Good afternoon.  Please be seated.

3            THE COURTROOM DEPUTY:  The matter before the Court is

4    Busey v Richland School District, Cause No. CR -- or, excuse me,

5    CV-13-5022-EFS, time set for motion hearing.  Counsel, please

6    state your presence for the record.

7            MR. ILLER:  Brian Iller on behalf of plaintiff,

8    James Busey.

9            MR. McFARLAND:  And Mick McFarland on behalf of all

10   defendants.

11           THE COURT:  Yes.  Counsel, good to see you again.

12   Let's get started.  I've read the materials.

13           MR. McFARLAND:  I'm sorry, your Honor?

14           THE COURT:  I have read the materials.

15           MR. McFARLAND:  Thank you.  And, your Honor, may it

16   please the Court and good afternoon.  I am going to keep my

17   comments very short today in part because I think the issue's

18   been well briefed and another part because I think the issue

19   before the Court is very clear.  And I think the analysis --

20           THE COURT:  Mr. Iller doesn't agree with you.

21           MR. McFARLAND:  No, he doesn't.

22           THE COURT:  Well, he does; but he thinks it's his --

23   it's in his favor.

24           MR. McFARLAND:  He thinks it's clear the opposite

25   direction.  Yes, your Honor.

MOTION HEARING - MAY 17, 2013
BY MR. McFARLAND

1    Before I talk specifics about the claims in this case, I do

2 want to mention a couple of the policies that we keep in mind

3 when dealing with any arbitration clause subject to the Federal

4 Arbitration Act, first of which is that the Supreme Court has

5 established a federal policy that, one, favors arbitration and,

6 two, requires arbitration provisions to be rigorously enforced.

7    Next, cases make it very clear that the standard for

8 demonstrating arbitrability is not high under the FAA.

9    Third, absent unmistakably clear language to the contrary,

10 cases say arbitration should be ordered unless it can be said

11 that the arbitration clause is not susceptible of an

12 interpretation that covers the asserted dispute.

13    Cases also make it very clear that all doubts regarding

14 whether or not a matter is arbitrable is to be -- or are to be

15 decided in favor of arbitration.

16    And, lastly, the easy-to-define standard for what is

17 arbitrable states that:  To require arbitration, factual

18 allegations need only "touch matters" covered by the contract

19 containing the arbitration clause.

20    Now, in this case, your Honor, the arbitration provision

21 provides that arbitration is required for "any dispute

22 hereunder."  There is no argument or opposition in this case to

23 the applicability of the FAA to Dr. Busey's employment contract.

24 And, really, the only question before the Court is whether or

25 not the claims that Dr. Busey's making in this matter are

1   subject to arbitration.  As previously stated and as briefed, I

2   believe the answer to that question is very clearly "Yes."

3       The easy analysis that we glean from the case law, your

4   Honor, is, as I already stated, that matters -- tort matters are

5   subject to arbitration if the claims, quote, touch upon matters

6   covered by the contract.

7       Cases also define arbitrability or say that arbitrability

8   is required if it is necessary to interpret and rely upon the

9   contract in order to resolve the claims.  If those two

10  propositions are true, then case law says a Court should order

11  arbitration.

12      Conversely, what the cases say is that if the claim -- that

13  claims fall outside the arbitration provision if those claims

14  can stand independent of the contract containing the arbitration

15  clause.

16      In the case cited and relied upon by Dr. Busey in his

17  briefing, the Golden v Dameron case, the Court said:  In order

18  to not be covered by an arbitration provision, the claims must

19  be able to be made, quote, without any reference to the terms of

20  the contract.  That, your Honor, in its most simple terms, is

21  why Dr. Busey's claims in this case are subject to the

22  arbitration provision and the FAA.  Simply stated, none of his

23  claims can be made without reliance upon and interpretation of

24  his employment contract.

25      When you examine those claims under that analysis, I submit

1  that it's proper to start by noting that Dr. Busey attached a

2  copy of the employment contract to his Complaint.  And, then, as

3  you read through the Complaint, there is reference to what the

4  School District allegedly did and didn't do pursuant to

5  Dr. Busey's employment contract.

6      For example, he alleges that the School District conducted

7  a, quote, sham investigation before terminating him.  He alleges

8  that the bases set forth in the termination letter were merely

9  pretexts for a discriminatory intent.  He asks that this Court

10  find that he is still employed pursuant to that employment

11  contract and asks for an award of his salary through June of

12  2015 pursuant to that contract.

13      THE COURT:  He does say that.  Do you understand that

14  to be that he's asking for an enforcement of the contract?

15      MR. McFARLAND:  That's the only way I can read it,

16  your Honor, yes.

17      THE COURT:  Well, what do you make of the notion that

18  he cited a statute that says, "If you don't do it thus and so,

19  the contract's in full force and effect through the balance of

20  the contract"?  And he's not relying on the contract for that so

21  much as he's pointing to the statutory language that requires

22  notice and the failure to give it has certain consequences

23  regarding the continuation of the contract through its full

24  term.

25      MR. McFARLAND:  Sure.  And -- and the statute in

MOTION HEARING - MAY 17, 2013
BY MR. McFARLAND

1  question, 28A.300.405 (sic), I believe, is specifically

2  referenced in the employment contract; and it is the statute

3  that gives the School District the authority in the first place

4  to hire Dr. Busey.

5      And, secondly, the provisions -- the notice provisions and

6  the procedures that he's claiming he was due are identical under

7  the statute and under the employment contract.

8      And I would also point out, your Honor, that the statutory

9  provisions that Dr. Busey claims he is due are due to him

10 because of the employment contract.  It -- they are -- they work

11 part and parcel or hand in hand, your Honor, both the contract

12 and the statute because, without the employment contract,

13 Dr. Busey would have no procedural rights under the statute

14 cited in his Complaint.

15     Did that answer your question, your Honor?

16         THE COURT:  I think that in your reply brief you

17 talked about the word "contract status" as having been used

18 within 28A.405.310 and .300.  And, so, your position is, yes,

19 he's right; but it's so inextricably intertwined with the

20 contract that it arises out of the contract because it gives

21 a -- I understand you to say this is the procedure that gives

22 enforcement rights to the contract status.

23         MR. McFARLAND:  Yes.  That is correct, your Honor.

24         THE COURT:  Okay.

25         MR. McFARLAND:  And, going back to what I said

1  earlier, I think the easiest way to analyze it is to envision a

2  trial in this case that Dr. Busey was pursuing in this

3  courtroom.  Any claim that he would pursue against the School

4  District which he has to rely upon any of the terms of the

5  contract or any of the status that he has because of the

6  contract, that claim is subject to arbitration because he can't

7  prosecute the claim without reference to the contract and

8  without reliance and interpretation on the contract.

9       And I think that you can distinguish that scenario, your

10  Honor, with, for example, a defamation claim.  If Dr. Busey was

11  alleging that a certain board member had defamed him, that is a

12  claim that he could prosecute without ever making reference to

13  or relying upon the contract.

14       THE COURT:  Sure.  And defamation is clear enough.

15  What about his assertion that it's his extra -- it's his marital

16  status since the -- the assertion was that it was extramarital

17  and, therefore, if that was the case, you could argue, I

18  suppose, under the contract that there was a morals clause.  But

19  he makes much of the notion that, under WLAD, people are free to

20  be free from discrimination because of marital status.  You

21  can't unemploy somebody because of marital status.

22       MR. McFARLAND:  Absolutely.  And, as an initial

23  matter, your Honor, of course, the School District denies that

24  it terminated Dr. Busey because of marital status but because he

25  was having an affair with a subordinate, which raises issues

MOTION HEARING - MAY 17, 2013
BY MR. McFARLAND

1 separate and apart from whether Dr. Busey --

2          THE COURT:  Where do you think the

3 phrase "extramarital" -- where do you think the word

4 "extramarital" came from?

5          MR. McFARLAND:  I mean --

6          THE COURT:  It comes from a dictionary.  But, beyond

7 that, wasn't it used in connection with the correspondence or --

8          MR. McFARLAND:  I think so.

9          THE COURT:  -- news releases or statements?

10          MR. McFARLAND:  I think it was, your Honor.  And I

11 think, however, we're getting into what the intent of the writer

12 was in that letter.  I -- I don't know the answer to that.  I

13 don't know what the evidence will be.

14          THE COURT:  All right.

15          MR. McFARLAND:  But I can submit that the -- it's my

16 understanding that the basis of the termination was not that

17 Dr. Busey was married but that Dr. Busey was having an affair

18 with a subordinate.

19      And, in addition to the --

20          THE COURT:  So it wouldn't make any difference whether

21 he was a bachelor or whether he was divorced or whether he was

22 married.

23          MR. McFARLAND:  Absolutely doesn't make a difference,

24 your Honor.  It's the fact that he's having an affair with a

25 subordinate.  That is the issue.

MOTION HEARING - MAY 17, 2013
BY MR. McFARLAND

1      THE COURT:  What do you make of the -- this business

2  of the date of the termination and the date of notice?

3      MR. McFARLAND:  I think that Dr. Busey, with all due

4  respect, your Honor, is -- is playing with semantics because --

5  and claiming that he was terminated based upon the probable

6  cause letter that was sent out that specifically referenced the

7  statute which gives Dr. Busey the right to have the procedure

8  that's due to him.  So it really is a matter of semantics.

9      THE COURT:  Okay.  Thank you.

10      MR. McFARLAND:  I would just point out, your Honor, in

11  addition to the morality clause that you referenced, there is

12  also a just cause provision in the contract.  And it's going to

13  be the School District's position that whether or not the affair

14  with a subordinate is terminable under the morality clause, it

15  gave just cause under the contract to terminate Dr. Busey.  And

16  that is why the defense of the case is going to be relying upon,

17  in part, the contract of Dr. Busey.  And that claim, therefore,

18  touches that contract.

19      THE COURT:  What do the cases say about that?

20      MR. McFARLAND:  About what, your Honor?

21      THE COURT:  About the fact that the defense arises out

22  of the contract.  Some of the cases, some of the opinions, have

23  dealt with that subject, haven't they, in the handful of cases

24  that you both talked about?

25      MR. McFARLAND:  I believe so, your Honor, because I

1 believe the -- the language refers generally to interpretation

2 of the contract.  And whether that's the defense's

3 interpretation or the plaintiff's interpretation, the

4 interpretation of the contract's going to be either a matter of

5 law or a question of fact for the jury, whether it's coming from

6 the defense or from the plaintiff.

7          THE COURT:  Okay.  So, when I look at the Claims for

8 Relief, Page 14 of Document 1, in this case, there are three

9 claims:  The 1983; the WLAD, marital status discrimination; and,

10 then, the liability under RCW 49 for wages and attorney's fees;

11 and, then, finally a declaratory judgment.  And, using those

12 three claims, what is your -- just sum up your position as to

13 why these are all arbitrable.

14          MR. McFARLAND:  I believe they are all arbitrable,

15 your Honor, because they cannot be litigated without reference

16 to an interpretation of the contract.

17          THE COURT:  So that's the key.

18          MR. McFARLAND:  That -- to me, that is the key.  Like

19 I said before, the cases, even the cases relied upon very

20 heavily by Dr. Busey in his opposition, all refer back to the

21 same language that -- I'll find it here, your Honor.  It's both

22 the Mediterranean case and the Tracer Research Corp case both

23 refer to claims being arbitrable if they, quote, relate to the

24 interpretation and performance of the contract.

25      The Tracer Research Corp case said that, when a tort claim

MOTION HEARING - MAY 17, 2013
BY MR. McFARLAND

1 constitutes an independent wrong from any breach of contract and

2 does not require interpretation of the contract, it's not

3 arbitrable.

4     It's our position that all of the claims are not

5 independent, and they have to be based upon the contract --

6         THE COURT:  Oh, let's take them one by one.

7         MR. McFARLAND:  Okay.

8         THE COURT:  Let's start with marital status

9 discrimination.

10         MR. McFARLAND:  Okay.

11         THE COURT:  How does that arise?  I think it's "any

12 dispute hereunder" is the language here, not "relating to,"

13 which is very broad, but "any dispute hereunder."  So tell me

14 why marital status "arises hereunder" meaning --

15         MR. McFARLAND:  Sure.  And -- and if I could step back

16 and -- and say that I do believe that the language of this

17 arbitration clause is broader than "arising hereunder" --

18         THE COURT:  Okay.  Well --

19         MR. McFARLAND:  -- because --

20         THE COURT:  -- point it out to me, and I'll look at

21 it.

22         MR. McFARLAND:  -- the -- well, the -- the language --

23         THE COURT:  I want to make sure that I'm tracking with

24 both of you.

25         MR. McFARLAND:  Sure.  The language of "any dispute"

MOTION HEARING - MAY 17, 2013
BY MR. McFARLAND

1   as opposed to "disputes arising hereunder" I believe I've cited

2   some case law in the reply brief that talks about Courts

3   generally identifying that language, "any claim" or "any

4   dispute," as being broader than a simple "arising hereunder."

5           THE COURT:  Well, "any" is a broad word.  But, then,

6   it's only the adjective modifying "disputes hereunder."  So it

7   doesn't change it.  It still has to be a "dispute hereunder."

8           MR. McFARLAND:  I agree.  I agree.  But I believe it

9   is -- I believe that, in this distinction that Courts make

10  between very narrow provisions and very broad provisions, it

11  fits in the broad category.

12          THE COURT:  Like you and Mr. Iller, I would wish for

13  greater clarity and some black letter law and a bright line rule

14  for all of us so we wouldn't have these issues.  Thank you.

15  Anything else?

16          MR. McFARLAND:  You -- I kind of dodged your question

17  there.

18          THE COURT:  There were three claims.

19          MR. McFARLAND:  Yeah.  The first one is the marital

20  discrimination, and I believe that that touches on the contract

21  because the contract provides the School District with the right

22  to terminate Dr. Busey for just cause and for the morality

23  provision that's contained in there.  And the basis for the

24  termination was the affair with the subordinate.  So I believe

25  that the language of the contract with respect to both of those

MOTION HEARING - MAY 17, 2013
BY MR. McFARLAND

1  paragraphs needs to be interpreted in order to have Dr. Busey

2  prosecute that claim.

3          THE COURT:  So, in the January 30th, 2013, letter to

4  Mr. Busey in Paragraph 1 where it says, "You have engaged in a

5  long-standing extramarital sexual affair with a subordinate

6  employee of the Richland School District."  That "extramarital"

7  is mere surplusage?

8          MR. McFARLAND:  I think it's -- I don't know if this

9  is the proper analogy, but I think that sometimes that word is

10  used in a generic sense and not specific to husband and wife and

11  -- or one's spouse having an affair outside that relationship.

12  I think it's -- I think, if this case proceeds to trial, the

13  evidence will be that the intent of that was "affair," not

14  "extramarital."

15          THE COURT:  Okay.  Then let's talk about the denial of

16  due process.  Is your argument that there -- there can't be an

17  argument -- there cannot be a litigated case on that basis

18  because the statutory right to that hearing is based upon the

19  existence of a contract; and, therefore, it's a dispute arising

20  thereunder?

21          MR. McFARLAND:  It's either a dispute directly arising

22  under the contract; or, if you want to take it outside of

23  RCW 28A.300 and say that, under Loudermill and general due

24  process cases, the only property right that Dr. Busey has in the

25  employment that entitles him to any process whatsoever is his

MOTION HEARING - MAY 17, 2013
BY MR. McFARLAND

1  contract for employment.  That's the property right that gives

2  rise to the requirement that process be given.

3          THE COURT:  Which of the cases do you think is a best

4  expression of that point?

5          MR. McFARLAND:  Of that point?  I -- I can't cite it

6  for you right now, your Honor.

7          THE COURT:  Okay.  I don't mean to put you on the

8  spot; but I thought, if there was a case that you both cited, a

9  State of Washington case, that dealt with that issue -- and I

10  want to make sure that I have it correctly.  Hang on.  The --

11  the brief, Document 10, says, quote, Busey's 1983 claim is based

12  on a Loudermill and cites to Giedra/Mount Adams School District,

13  a 2005 case, created a property right in a Loudermill hearing.

14  So that property right arises out of Loudermill but assumes an

15  employment relationship.

16          MR. McFARLAND:  It has to assume more than a -- than

17  an employment relationship.  It has to assume a protected right

18  in that relationship, which can be the result of, you know, an

19  employment handbook or a contract or, in this case, that

20  property right.  The only thing that gives Dr. Busey the right

21  to continued employment and, therefore, a property right in

22  employment is the contract.

23          THE COURT:  And I gather you take some solace from the

24  language in that case, which I guess it's RCW 28A.405.300; but

25  that's interpreted in Foster.  And I'll take a look at that

1 case.  I haven't read that one.  Okay.  Thanks.

2          MR. McFARLAND:  Thank you, your Honor.

3          THE COURT:  Mr. Iller.

4          MR. ILLER:  Thank you, your Honor.

5          THE COURT:  Is the -- is, as counsel says, the rights

6 that he has dependent under the statute that you rely on and,

7 therefore, must, in fact, arise out of a contract?  RCW 28 --

8 the one statute that you folks have been citing to me.

9          MR. ILLER:  28A.405.300 I believe, your Honor.

10          THE COURT:  Right.  Or 28A --

11          MR. ILLER:  Yes.  This -- these claims do arise out of

12 the contract.  They are asserted.  They are in connection with

13 the contract.  The problem is that the Richland School District

14 did not use that language in its arbitration clause.

15     Rather than use the language recommended by the American

16 Arbitration Association, which they quote in the arbitration

17 clause which is "arising hereunder" or "relating to," they use

18 "arising any disputes hereunder."  That's the clause -- that's

19 the clause that they drafted that Mr. Busey accepted.  Ninth

20 Circuit law is crystal clear that "arising hereunder" is a

21 narrow arbitration clause and that, if parties want to arbitrate

22 all claims between them, they need to use additional language,

23 such as, "relating to" or "in connection with."

24     The Mediterranean, Tracer, and Cape Flattery cases are

25 exactly on point when it comes to the arbitration language.

1 They hold, first, "arising hereunder" has the same meaning as

2 "arising under."

3     Second, that "arising hereunder" is a narrow arbitration

4 clause.

5     Third, that, under such narrow arbitration clauses, mere

6 "but for" relationship to the contract is not a basis, not

7 sufficient to make a claim arbitrable.  And, under such narrow

8 arbitration clause, the only claims that are subject to

9 arbitration are claims that relate to the interpretation and

10 performance of the contract itself.  Dr. Busey has submitted no

11 such claims in this case.

12     I did prepare a table, which discusses the clauses of the

13 Ninth Circuit cases.  And I guess -- and I think this is the

14 proof of the pudding that Dr. Busey has the law correct and the

15 Richard School District does not have the law correct.  This

16 whole argument in the rely brief and here today that the term

17 "any" somehow broadens the clause and is somehow a

18 distinguishing factor in the Ninth Circuit cases -- they're

19 referring to Cape Flattery in their brief -- is just simply

20 wrong.

21     The Mediterranean arbitration language was any disputes

22 arising hereunder.

23     The Tracer arbitration clause:  Any controversy or claim

24 arising out of this agreement.

25     The Cape Flattery v Titan clause:  Any dispute arising

1  under this agreement.

2      I mean, those are -- have exactly the same meaning as "any

3  disputes hereunder."

4      The Golden case is the one I originally cited back to the

5  District when they raised that issue.  And they -- that clause

6  includes "arising out of," "related to," or "in any way

7  connected with."  Much broader than this case.  Still, the

8  Golden Court -- and, admittedly, it's another District Court so

9  you're not bound by it -- held that Title VII claims were not

10 subject to arbitration under that broad a clause.

11     So, really, the School District has the law wrong as to the

12 meaning of "any disputes hereunder."  And it also is incorrect

13 on the test as to what constitutes a claim that arises under the

14 contract.  Again, the language from Mediterranean, quote, relate

15 to the interpretation and performance of the contract itself,

16 end quote.

17     And I think the easiest way to prove that this is not such

18 a case is to ask yourself:  Assume -- Dr. Busey does not admit

19 it for a minute, but assume that Dr. Busey did breach the

20 contract.  Does Dr. Busey still have a Section 1983 claim for

21 the taking of his property right in employment without following

22 the due process established by the statute?  The answer is

23 clearly "Yes."

24     Now, why do we know that?  Because the statute provides an

25 extraordinary remedy.  It says, if you do not provide notice of

1 probable cause and an opportunity to be heard prior to a

2 decision to terminate being made, then the contract remains in

3 force; and those causes can never be used again against the

4 employee.

5        THE COURT:  What do you make of the fact that counsel

6 says that it -- "but for" the rights only arise because he has a

7 contract --

8        MR. ILLER:  Well, your Honor, that --

9        THE COURT:  -- and, therefore, it's an enforcement of

10 a statutory right that's dependent upon the existence of a

11 contract?  That's his take on that.

12        MR. ILLER:  That is expressly addressed in the Tracer

13 case.

14        THE COURT:  Okay.  Let's talk about it.

15        MR. ILLER:  Okay.  Tracer says -- and this is quoted

16 in Cape Flattery, quote -- by the Cape Flattery Court -- "Tracer

17 further clarified that a tort claim is not arbitrable just

18 because it would not have arisen 'but for' the parties'

19 agreement."  So that exact argument's already been rejected by

20 the Ninth Circuit twice in Tracer and in Cape Flattery.

21    Now, let's also talk about the "raising" it in defense.

22 So, now, we don't -- certainly the contract is relevant.  It

23 will establish the damages that Dr. Busey is covered -- or has

24 suffered.  But, in the Golden case, again, at Page 8, the Golden

25 Court states, and I quote, "Defendants represent that they will

MOTION HEARING - MAY 17, 2013
RESPONSE BY MR. ILLER

1  defend the discrimination case by showing that their treatment

2  of Dr. Golden, resulted from her poor performance under the

3  contract.  But this is not enough to bring the discrimination

4  and defamation claims under the arbitration clause."

5      Again, another argument made by the Richland School

6  District that's already been rejected by a -- by another Court

7  in this Circuit.

8      Same holding in Wireless Warehouse v Boost Mobile cited at

9  Page 9 of our brief; another District Court case in Central

10 District of California; same argument:  "... At oral argument,

11 Defendant suggested that it will use the Agreement defensively

12 to suggest, for example, that Plaintiff's reliance on subsequent

13 oral promises was not reasonable ..." under "the

14 Agreement's terms.  While Defendant's possible state-law

15 defenses might ultimately prove successful, they are

16 insufficient to bring Plaintiff's independent claims within the

17 scope of a narrow arbitration clause when those clauses (sic) do

18 not relate to the interpretation and performance of the

19 Agreement."

20     And the Court goes on in language which I think is

21 particularly applicable here.  Quoting Tracer (sic) again,

22 "Given the clarity of Ninth Circuit case law regarding (sic) the

23 expansive application of arbitration agreements using any one of

24 a familiar set of broad phrases, parties to an agreement need

25 only employ such phrases to ensure the arbitrability of all

1  claims arising from their relationship or a particular aspect

2  thereof."  Actually, it's quoting Zoran Corporation.  "The

3  parties in this case agreed instead to a narrow arbitration

4  clause.  As such, the Court must effectuate the parties' intent

5  and find Plaintiff's claims outside the scope of the arbitration

6  requirement."

7       Well, that's exactly the case we have here.  The District

8  used the narrow clause, not a broad clause.  The reference in

9  the American Arbitration Association rules, which recommend the

10  "arising out of" or "related to" language, which they chose not

11  to use, and now they want to come to court and have this Court

12  save them from their own language and refer all of these other

13  matters to arbitration.

14       Dr. Busey objects to that.  He thinks he's entitled to his

15  day in this courtroom on these claims.

16            THE COURT:  Thank you.

17            MR. ILLER:  Thank you.

18            THE COURT:  Okay.  Mr. McFarland.

19            MR. McFARLAND:  Again, your Honor, I'll be brief.

20  There were a couple statements that counsel made right off the

21  bat that I need to highlight.  The first one is the concession

22  that these, quote, claims arise out of the contract.

23       Second, he said the case is based upon the contract.

24       And, then, towards the end he said the contract is

25  certainly relevant and that the contract establishes Dr. Busey's

1 damages in this case.

2      That's the point.  The point is it doesn't matter whether

3 you're dealing with a broad arbitration clause or a narrow

4 arbitration clause.  All the cases cited by counsel -- or by

5 Dr. Busey and by the District come back whether or not it's a

6 broad clause or a narrow clause and say the touchstone for

7 arbitrability is whether or not the claims relate to the

8 interpretation and performance of the contract.  That is what

9 the Court has to determine in this case, not whether the

10 arbitration clause is broad or narrow.  It is simply whether or

11 not these are independent tort claims or they are claims that

12 arise out of and relate to the interpretation or require the

13 interpretation and the performance of the contract.  That's the

14 sole issue.

15      There was an argument that the School District is making a

16 "but for" argument in this case.  We're not because that's,

17 again, a different issue.  What the Tracer Court said is that

18 the "but for" test doesn't necessarily determine arbitrability.

19 And, specifically, you can't just say that, but for the

20 employment relationship, this claim never would have existed.

21 I'll go back to the arbitration -- or, excuse me, the defamation

22 claim.  If a School Board member defamed Dr. Busey, that would

23 be an independent claim.  But, nonetheless, that claim would

24 be -- or but for the employment relationship, that claim would

25 have never existed.  So that's not the standard.

MOTION HEARING - MAY 17, 2013
REPLY BY MR. McFARLAND

1      The standard is do -- does the -- do the claims relate to

2   the contract?  Do they necessitate interpretation of the

3   contract and to determine whether there's been performance of

4   the contract?

5      Lastly, your Honor, on Page 7 of Document 5, our opening

6   brief, there's a citation to the case of Madrid v Concho

7   Elementary School District.  I think of every case that has been

8   cited by either party, that is the most on point.  It deals with

9   a superintendent being terminated prior to the conclusion of the

10  contract and bringing many of the same claims, including

11  discrimination claims, against that school district.  And the

12  Court, for the proper analysis, I believe --

13          THE COURT:  What was the language in that case?

14          MR. McFARLAND:  The arbitration language?  I can't

15  tell you that, your Honor.  I don't know off the top of my head.

16  But, again, I -- I don't think the focus, with all due respect,

17  is on the arbitration clause language but is upon whether or

18  not, under a narrow restrictive arbitration clause or a more

19  broad arbitration clause, simply whether or not those claims can

20  be prosecuted without reference to the contract.

21          THE COURT:  I've listened.  If you have more on a

22  different point, I'll be happy to hear that.

23          MR. McFARLAND:  I don't.  I don't.

24          THE COURT:  Okay.  Thanks.

25          MR. McFARLAND:  Thank you, your Honor.

MOTION HEARING - MAY 17, 2013
COURT'S ORAL DECISION

1          THE COURT:  There's enough language in all the cases

2   so that both parties can confidently express to anyone who'll

3   listen to them that they're absolutely right and that anybody

4   who disagrees with them is quite wrong.  There's just that kind

5   of lose language everywhere.

6          In the Court's mind, this is, in fact, a clause that is

7   very narrow and that the claims cited by the defendant -- by the

8   plaintiff don't, in fact, implicate the arbitration clause.

9          And, so, I'm going to rule that they're independent of and

10  that the -- the motion to stay proceedings and compel

11  arbitration is denied; and I'll issue a written ruling shortly.

12         I appreciate your briefing and the good advocacy.  Thank

13  you very much.

14         MR. McFARLAND:  Thank you, your Honor.

15         MR. ILLER:  Thank you very much, your Honor.

16     (Court recessed at 1:39 p.m.)

17

18

19

20

21

22

23

24

25

1                    <u>**GENERAL INDEX**</u>

2                                                        <u>**PAGE**</u>

3    Motion Hearing - May 17, 2013........................ 2
         By Mr. McFarland................................. 2
4        Response by Mr. Iller............................15
         Reply by Mr. McFarland..........................20
5        Court's Oral Decision...........................23

6    Reporter's Certificate.............................. 25

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

C E R T I F I C A T E

I, RONELLE F. CORBEY, do hereby certify:

That I am an Official Court Reporter for the United States District Court for the Eastern District of Washington in Spokane, Washington;

That the foregoing proceedings were taken on the date and at the time and place as shown on the first page hereto; and

That the foregoing proceedings are a full, true and accurate transcription of the requested proceedings, duly transcribed by me or under my direction.

I do further certify that I am not a relative of, employee of, or counsel for any of said parties, or otherwise interested in the event of said proceedings.

DATED this 13th day of August, 2013.


*/s/ Ronelle F. Corbey*

RONELLE F. CORBEY
Official Court Reporter
Spokane County, Washington