1

2

3

4

5                    UNITED STATES DISTRICT COURT

6                   EASTERN DISTRICT OF WASHINGTON

7   JAMES BUSEY, an individual,

8                              Plaintiff,              NO:  2:13-CV-5022-TOR

9        v.                                            ORDER DENYING IN PART AND
                                                       GRANTING IN PART
10  RICHLAND SCHOOL DISTRICT,                          DEFENDANTS' MOTION FOR
    RICHARD JANSONS, HEATHER                           PARTIAL SUMMARY JUDGMENT
11  CLEARY, MARY GUAY, RICK
    DONAHOE, and PHYLLIS
12  STRICKLER,

13                             Defendants.

14

15        BEFORE THE COURT is Defendants' Motion for Partial Summary

16  Judgment (ECF No. 76).  This matter was heard on December 10, 2015, in

17  Spokane, Washington.  Brian J. Iller appeared on behalf of Plaintiff.  Markus W.

18  Louvier appeared on behalf of Defendants.  The Court has reviewed the briefing,

19  the record, and files therein; heard from counsel; and is fully informed.

20  ///

ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 1

1

**BACKGROUND**

2      This case concerns the termination of former Richland School District

3  Superintendent, James Busey.  Following his termination in the winter of 2013,

4  Plaintiff filed suit against Richland School District and Richland School District

5  Board members, asserting violations of procedural due process under 42 U.S.C. §

6  1983, the Washington Law Against Discrimination ("WLAD"), state wage law,

7  and Washington's Public Records Act.  ECF No. 1 at 14.  Plaintiff also requests a

8  declaratory judgment that he was terminated in violation of state law and that he

9  remained employed under his employment contract through June 2015.  *Id.* at 15.

10      In the instant motion, Defendants jointly move for summary judgment on

11  Plaintiff's section 1983, WLAD, and state wage law claims, as well as Plaintiff's

12  request for declaratory judgment.  ECF No. 76.

13

**FACTS[1]**

14      Beginning on July 1, 2010, Plaintiff James Busey was employed as the

15  Superintendent of Richland School District and subject to the Superintendent's

16  Employment Contract.  ECF No. 78-1 at 3-4; *see* ECF No. 1 at 18 (Employment

17  Contract).

18

19

20

---

[1] The following are the undisputed material facts unless otherwise noted.

ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 2

By November 2012, Dr. Busey and para-educator Debbie Hamilton had been involved in a romantic relationship for about one year.  ECF No. 78-1 at 6. During that period, Dr. Busey and Ms. Hamilton frequently met off-campus between the hours of 8 a.m. and 3 p.m.[2] and would engage in sexual intercourse in Ms. Hamilton's car in the parking lots of a retirement home and church.  *Id.* at 9-12.

Dr. Busey and Ms. Hamilton would communicate through the school district email system to arrange their off-campus meetings.  *Id.* at 22.  Dr. Busey would also text Ms. Hamilton on his cellular phone, either paid for or issued by the Richland School District.  *Id.* at 23.  By Dr. Busey's own admission, use of his district email and cell phone to arrange these meetings violated School Board Policy 9273, which prohibits use of district property and equipment for "entertainment, personal benefit or gain," and which policy applied to Dr. Busey. *Id.* at 21-22, 24.  That being said, Dr. Busey maintains that no employee had ever

_____

[2] It is unclear whether Dr. Busey and Ms. Hamilton met during the school day at times other than designated breaks.  Dr. Busey's deposition testimony merely states that the two "may" have met during the school day at times other than lunch. ECF No. 78-1 at 9.  Dr. Busey's declaration explains that they met during lunch breaks, as well as other designated breaks.  ECF No. 85 at 2.

ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 3

been terminated or even disciplined for using district email, cell phones, computers, or other equipment to simply communicate or arrange meetings for personal purposes.  ECF No. 85 at 2.[3]

On November 8, 2012, Richland School District General Counsel Galt Pettett advised Dr. Busey that he had learned Dr. Busey and a para-educator at Jefferson Elementary School were having a relationship.  ECF No. 78-1 at 5-6.  Dr. Busey acknowledged his relationship with Ms. Hamilton.  *Id.* at 45.  Mr. Pettett advised Dr. Busey to report the matter to Rick Jansons, the chair of the Richland School District Board.  *Id.* at 43.  Subsequently, Dr. Busey met with Mr. Jansons

---

[3] In their reply briefing, Defendants object to several statements in Dr. Busey's declaration as lacking foundation, speculative, and containing inadmissible opinion and hearsay.  ECF No. 87 at 8-10.  To the extent Dr. Busey's declaration contains inadmissible hearsay, this Court does not rely on these statements in ruling on summary judgment; however, to the extent Dr. Busey's declaration is based on personal knowledge, this Court may consider these matters.  *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.").

ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 4

and disclosed his "ongoing relationship" with Ms. Hamilton. *Id.* at 45-47. At the time, Dr. Busey did not explicitly tell Mr. Jansons it was a sexual relationship, *id.* at 47; however, Dr. Busey disputes that Mr. Jansons could have had any other understanding, ECF No. 85 at 3.

After Dr. Busey's disclosure, Mr. Jansons and Tony Howard of Human Resources interviewed a number of people about Dr. Busey's relationship with Ms. Hamilton. ECF No. 78-1 at 50-51. Near the end of November, Mr. Jansons advised Dr. Busey that the investigation had been completed and that Dr. Busey's conduct did not give rise to any breaches of contract or policy. *Id.* at 52. At that point in time, Dr. Busey had not disclosed the off-campus meetings with Ms. Hamilton during the school day or his communications with her through district email and cell phone. *Id.* at 53-54 ("Q: Okay, and as of December 7th, 2012, had you advised Rick Jansons that you had been meeting with Ms. Hamilton between the hours of 8 a.m. and 3 p.m. on school days in a parking lot for the purpose of having sexual intercourse? A. No. Q. Do you know whether, as of December 7th, 2012, Rick Jansons was aware of the personal e-mails that you and Ms. Hamilton had been exchanging through your Richland School District accounts over the past year? . . . A. I did not know that.").

At some point between December 7, 2012, and December 10, 2012, Dr. Busey and Ms. Hamilton's relationship became public after information was given

1  to the Tri-City Herald, a local newspaper. *Id.* at 56.  On December 10, 2012,

2  Richland School District placed Dr. Busey on paid administrative leave. *Id.* at 55.

3      Richland School District directed Alan Key—an employee of a third-party

4  administrator responsible for managing insurance risk pools, including the

5  insurance pool that insures Richland School District—to investigate allegations

6  about Dr. Busey's conduct. ECF No. 84-4 at 2-4.  Mr. Key interviewed Dr. Busey

7  on January 21, 2013, which interview was recorded.  ECF No. 78-2.  Mr. Key

8  started the interview by explaining he was asked by the School Board to conduct

9  an investigation and, although "still in the middle of that investigation," he was

10  meeting with Dr. Busey in order to "give [him] an opportunity to respond to what

11  [Mr. Key was] investigating." *Id.* at 2.  During the course of the interview the two

12  discussed Dr. Busey's relationship with Ms. Hamilton; Dr. Busey's personal use of

13  district equipment, including email and cell phone; and the possible impact the

14  affair would have on Dr. Busey's job, including the perspective of his staff. *See id*.

15  at 2-42.

16      Mr. Key reported the results of his investigation to the Richland School

17  District Board, ECF Nos. 78-5 at 4, and on January 22, 2013, the Board decided to

18  terminate Dr. Busey's employment, ECF No. 78-4 at 5.  In a press release, the

19  Richland School District confirmed that it had "voted unanimously to terminate

20  Dr. Busey as superintendent of the Richland School District." ECF No. 84-5.

Statements to three different media outlets by Mr. Jansons similarly stated Mr. Busey's termination was "effective immediately."  ECF Nos. 84-6, 84-7, 84-8.  For purposes of this summary judgment motion, the parties do not genuinely dispute that the Board terminated Dr. Busey's employment on January 22, 2013.  *See* ECF Nos. 77 at 1 (Defendants' Statement of Undisputed Material Facts); 78-1 at 4 (Dr. Busey's deposition testimony); 83 at 2 (Plaintiff Busey's Statement of Disputed Facts).  Indeed, one day later, on January 23, 2013, the Richland School District sent Dr. Busey notice that his insurance coverage would end March, 1, 2013, due to "[his] termination."  ECF No. 84-9 at 2.

On January 30, 2013, the Richland School District sent Dr. Busey a letter, signed by Mr. Jansons, entitled "Notice of Probable Cause for Discharge and Nonrenewal Pursuant to RCW 28A.405.210 and RCW 28A.405.300."  ECF No. 78-3.  Based on the Board's review of all information from Mr. Key's investigation, including comments made by Dr. Busey during the interview the week before, the Board found Dr. Busey had engaged in conduct that "materially and substantially affected" Dr. Busey's ability to perform his duties as Superintendent.  *Id.* at 2.  Specifically, the Board found the following: that Dr. Busey had (1) engaged in "a long-standing extramarital affair with a subordinate employee of the Richland School District;" (2) engaged in inappropriate and unprofessional conduct with a female professional "while . . . married;" (3) used

district equipment for "inappropriate personal reasons including pursuit of [his] inappropriate extramarital affair with a School District staff member;" (4) caused disruption and unnecessary stress at Ms. Hamilton's work site, an elementary school in the School District; (5) threatened to go to the press and cause harm to the School District if he was not reinstated or paid the full amount of his employment contract; (6) informed the press of an issue not shared with the Board; and (7) created the appearance of a conflict of interest and exposed the School District to potential liability. *Id.* at 3. The Board concluded that probable cause existed for Dr. Busey's discharge, and in the letter's closing, advised Dr. Busey of his right to challenge or appeal the discharge and suggested Dr. Busey consult with an attorney. *Id.*[4]

---

[4] Defendants cite to Dr. Busey's employment contract, which required that he "devote his full time, skill, labor and attention" to his employment as Superintendent. ECF No. 1 at 20. Although the Board found the above listed conduct "materially and substantially affected [Dr. Busey's] ability to perform the duties of Superintendent of schools," ECF No. 78-3 at 2, the Board did not cite this provision of the contract in support of its termination decision. Thus, it is unclear if this provision motivated the Board's discharge decision.

ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 8

1    Dr. Busey received the letter on February 4, 2013.  ECF No. 78-1 at 57.  On

2    February 14, 2013, Dr. Busey's attorney, Brian Iller, sent a letter to Richland

3    School District's attorney, Greg Stevens, asserting that Dr. Busey had not been

4    given a pre-termination hearing and consequently remained employed as

5    Superintendent.  ECF No. 1 at 30-39.  In response, Mr. Stevens acknowledged Dr.

6    Busey's right to a hearing before the Board, pursuant to Dr. Busey's employment

7    contract, and invited Dr. Busey to let the Board know if he would like a hearing.

8    ECF No. 78-6.  Mr. Iller responded on February 25, 2013, indicating that Dr.

9    Busey saw "no point" in having a hearing considering the circumstances.  ECF No.

10   78-7.  That same day, Dr. Busey filed suit with this Court.  ECF No. 1.

11                              **DISCUSSION**

12   Summary judgment may be granted to a moving party who demonstrates

13   "that there is no genuine dispute as to any material fact and the movant is entitled

14   to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the

15   initial burden of demonstrating the absence of any genuine issues of material fact.

16   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then shifts to the

17   non-moving party to identify specific facts showing there is a genuine issue of

18   material fact.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

19   "The mere existence of a scintilla of evidence in support of the plaintiff's position

20

will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

For purposes of summary judgment, a fact is "material" if it might affect the outcome of the suit under the governing law. *Id.* at 248.  A dispute concerning any such fact is "genuine" only where the evidence is such that the trier-of-fact could find in favor of the non-moving party. *Id.*  "[A] party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.* (internal quotation marks and alterations omitted); *see also First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968) (holding that a party is only entitled to proceed to trial if it presents sufficient, probative evidence supporting the claimed factual dispute, rather than resting on mere allegations).  Moreover, "[c]onclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *see also Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081-82 (9th Cir. 1996) ("[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment.").

In ruling upon a summary judgment motion, a court must construe the facts, as well as all rational inferences therefrom, in the light most favorable to the non-

ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 10

moving party, *Scott v. Harris*, 550 U.S. 372, 378 (2007), and only evidence which would be admissible at trial may be considered, *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). *See also Tolan v. Cotton*, 134 S. Ct. 1861, 1863 (2014) ("[I]n ruling on a motion for summary judgment, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." (internal quotation marks and brackets omitted)).

**A. Section 1983 Claim**

Plaintiff alleges, pursuant to 42 U.S.C. § 1983, that the Board members violated his Fourteenth Amendment right to procedural due process by failing to provide him with an adequate pre-termination hearing.

A cause of action pursuant to section 1983 may be maintained "against any person acting under color of law who deprives another 'of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 887 (9th Cir. 2003) (quoting 42 U.S.C. § 1983). The rights guaranteed by section 1983 are "liberally and beneficently construed." *Dennis v. Higgins*, 498 U.S. 439, 443 (1991) (quoting *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 684 (1978)).

Defendants do not appear to dispute that the Board members acted under color of state law. *See* ECF No. 76. Accordingly, the only issue for this Court's

review is whether a genuine issue of material fact exists as to whether they

deprived Plaintiff of his constitutional right to procedural due process.

### 1. Adequacy of Pretermination Procedures

The Fourteenth Amendment prohibits states from "depriv[ing] any person of

life, liberty, or property, without due process of law." U.S. Const. Amend. XIV.

"Procedural due process rules are meant to protect persons not from the

deprivation, but from the mistaken or unjustified deprivation of life, liberty, or

property." *Carey v. Piphus*, 435 U.S. 247, 259 (1978).

A procedural due process claim has two discrete elements. First,

the court "asks whether there exists a liberty or property interest which has been

interfered with by the State." *Vasquez v. Rackauckas*, 734 F.3d 1025, 1042 (9th

Cir. 2013) (internal quotation marks and citation omitted). Second, the court

"examines whether the procedures attendant upon that deprivation were

constitutionally sufficient." *Id.* "[T]he Due Process Clause provides that certain

substantive rights—life, liberty, and property—cannot be deprived except pursuant

to constitutionally adequate procedures." *Cleveland Bd. of Educ. v. Loudermill*,

470 U.S. 532, 541 (1985).

Contrary to Plaintiff's briefing, what process remains due is a question of

federal, not state, law. *Id.* (holding that what process is constitutionally sufficient

is "not to be found in the [state] statute"); *see also Ford v. Wainwright*, 477 U.S.

ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 12

399, 428-29 (1986) ("[R]egardless of the procedures the State deems adequate for determining the preconditions to adverse official action, federal law defines the kind of process a State must afford prior to depriving an individual of a protected liberty or property interest.").  "[A] plaintiff is not necessarily entitled, as a matter of *federal due process*, to all of the procedures provided by state law."  *Whalen v. Mass. Trial Ct.*, 397 F.3d 19, 22 n.2 (1st Cir. 2005) (emphasis added).  Rather, what process is constitutionally sufficient is a matter of federal law.  *See id.* at 26 n.6 (1st Cir. 2005) ("Although a property right in employment must arise from state law, what process is due is a question of federal law."); *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 321 n.7 (2d Cir. 2002) ("[T]he issue of what process is due under the Fourteenth Amendment is strictly a matter of federal, not state, law."); *Gray v. Laws*, 51 F.3d 426, 438 (4th Cir. 1995) ("The Constitution's due process requirements are defined by the Constitution and do not vary from state to state on the happenstance of a particular state's procedural rules.").  To find otherwise would directly contravene clear precedent holding that violations of state law do not give rise to section 1983 claims.  *See, e.g.*, *Ove v. Gwinn*, 264 F.3d 817, 824 (9th Cir. 2001) ("To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress.").

As an initial matter, there can be no dispute that Dr. Busey's interest in continued employment is constitutionally protected. While the U.S. Constitution does not define protected property interests, state law can. *Loudermill*, 470 U.S. at 538-39. RCW 28A.405.210 expressly protects certificated employees from termination without cause. Defendants do not attempt to dispute that Washington law creates a constitutionally protected interest in continued employment for certificated teachers, like Dr. Busey.

It is similarly clear that Dr. Busey was due some pretermination process before he was ultimately terminated. It is well-settled that a public employee with a constitutionally-protected interest in his or her continued employment is entitled to some form of process prior to being terminated. *Loudermill*, 470 U.S. at 542. Generally, due process requires that an employee facing termination receive "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Id.* at 546. And, as the Supreme Court emphasized, an employee's opportunity to be heard must occur *before* the employee is terminated. *Id.*

In the public employment context, "[t]he need for some form of pretermination hearing . . . is evident from a balancing of the competing interests at stake." *Id.* at 542. The employee has a significant interest in retaining employment, the government has an interest in expeditiously removing

ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 14

unsatisfactory employees and avoiding administrative burdens, and both have an interest in preventing an erroneous termination.  *Id.* at 542-43.  "[S]ome opportunity for the employee to present his side of the case is recurringly of obvious value in reaching an accurate decision."  *Id.* at 543.  "Even where the facts are clear, the appropriateness or necessity of the discharge may not be; in such cases, the only meaningful opportunity to invoke the discretion of the decisionmaker is likely to be *before* the termination takes effect."  *Id.* (emphasis added).

Here, the parties do not genuinely dispute that the Board terminated, or at least attempted to terminate, Dr. Busey's employment on January 22, 2013.[5]  Thus, the question becomes whether Dr. Busey was afforded adequate pretermination process before this date.

Defendants assert that Mr. Key's interview of Dr. Busey, conducted one day earlier on January 21, 2013, provided sufficient due process: Mr. Key conducted an interview prior to termination during which Mr. Key gave Dr. Busey oral notice of

---

[5] Although the Complaint alleges that the Board informally decided to terminate Dr. Busey's employment on or before December 11, 2012, ECF No. 1 at 6, Plaintiff's response briefing repeatedly references January 22, 2013, as the date of termination.

ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 15

1    what he was investigating and allowed Dr. Busey to respond to his findings.  ECF

2    No. 76 at 9.  In response, Plaintiff asserts he was not given notice of all charges

3    against him or an explanation of the supporting evidence either before or during

4    the interview with Mr. Key.  ECF No. 82 at 10.

5            This Court finds Defendants are not entitled to summary judgment on this

6    claim as a reasonable jury could find the pretermination process afforded Mr.

7    Busey by the Board was deficient.  Under the standard announced in *Loudermill*,

8    Dr. Busey was entitled to some form of a pretermination hearing that consisted of

9    notice, an explanation of the evidence against him, and an opportunity to be heard.

10   Based on the evidence presented, viewed in the light most favorable to Dr. Busey,

11   a reasonable jury could certainly find in Dr. Busey's favor on this claim.

12           First, a reasonable jury could find that Dr. Busey was not provided adequate

13   notice of the charges against him.  Whether Mr. Key's interview—conducted "in

14   the middle of his investigation"—satisfied this element of *Loudermill* due process

15   is in dispute.  As the investigation was still ongoing at the time of Mr. Key's

16   interview, it is unclear how Dr. Busey could have been given notice of all charges

17   and an explanation of all the evidence that would be used against him.  Indeed, as

18   can be found in the Board's January 30 letter to Dr. Busey, information gathered

19   during this interview was later used for formulating charges against Dr. Busey.

20

Second, a reasonable jury could find that Dr. Busey was not given adequate notice of the Board's contemplation of the dismissal action.  In the Ninth Circuit, notice of an employer's intent to terminate is an essential component of pre-termination due process.  *Matthews v. Harney Cnty., Or., Sch. Dist. No. 4*, 819 F.2d 889, 892 (9th Cir. 1987) ("On the issue of notice, we read *Loudermill* to require, in advance of any pre-termination hearing (1) notice to the employee as to the pendency or contemplation of a dismissal action, and (2) notice as to the charges and evidence which give rise to that concern.").  Although Dr. Busey was cognizant of the possibility of his dismissal, it is unclear whether he was given actual notice before his alleged *Loudermill* hearing.  Indeed, Defendants' reply briefing seems to suggest it was the Board's January 30 letter—sent one week after Mr. Key's interview and Dr. Busey's termination—that gave Plaintiff notice of probable cause for his termination.  ECF No. 87 at 5.  Without such information before a hearing, Dr. Busey was deprived of the opportunity to "present reasons  . . . why [the] *proposed* action should not be taken."  *Loudermill*, 470 U.S. at 546 (emphasis added).

Third, without notice and explanation of the charges supporting probable cause for his termination, a reasonable jury could find that Dr. Busey was not given adequate opportunity to respond to the charges against him and object to the necessity of a dismissal action.

ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 17

The District's subsequent notice of charges against him and invitation to hold a hearing cannot remedy lacking pretermination process.  Defendants have presented no justification why predeprivation process was not constitutionally required here.  *See Brewster v. Bd. of Educ. of Lynwood Unified School Dist.*, 149 F.3d 971, 984-85 (9th Cir. 1998) (discussing situations where post-deprivation process alone was sufficient).  "In the context of process due a terminated public employee, a full post-deprivation hearing does not substitute for the *required pre-termination* hearing."  *Clements v. Airport Auth. of Washoe Cnty.*, 69 F.3d 321, 332 (9th Cir. 1995); *see also Levine v. City of Alameda*, 525 F.3d 903, 905-06 (9th Cir. 2008) ("As an employee with a property interest under the Due Process Clause, [plaintiff] was entitled to have a hearing *before* his lay off to allow him to present his side of the story." (emphasis added)).  *Loudermill* itself reveals that post-termination administrative hearings, even if followed by judicial review, are ordinarily insufficient standing alone to satisfy procedural due process in the public employee context.  470 U.S. at 544-45.  Although the nature of subsequent proceedings may lessen the amount of process that the state must provide pre-termination, subsequent proceedings cannot serve to eliminate the essential requirement of a pre-termination notice and opportunity to respond in the case of a public employee.  *See Clements*, 69 F.3d at 332.

To be meaningful, a hearing—however informal or elaborate—must occur *before* the decisionmaker has come to its conclusion and deprived the individual of a significant property interest. *See Loudermill*, 470 U.S. at 542. To find otherwise would condone post-hoc reasoning that might result in erroneous deprivation of a significant constitutionally protected interest, a result the due process clause is intended to prevent. As stated previously, a pretermination hearing is necessary not only to resolve disputed facts but also to challenge the necessity of the proposed termination. *See id.* at 543 ("Even where the facts are clear, the appropriateness or necessity of the discharge may not be; in such cases, the only meaningful opportunity to invoke the discretion of the decisionmaker is likely to be *before* the termination takes effect." (emphasis added)).

By the time the Board notified Dr. Busey of its probable cause for termination and afforded Dr. Busey an opportunity to be heard on the charges, weeks had passed since it announced—to multiple press outlets—that Dr. Busey's termination was "effective immediately;" thus, it is doubtful that subsequent process would have been meaningful. Accordingly, viewing the evidence in the light most favorable to Plaintiff, a jury could reasonably find that Dr. Busey did not receive adequate notice or a meaningful opportunity to be heard.

///

///

ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 19

### 2. Qualified Immunity

The individual Board members assert that, even if the Court finds Mr. Key's interview was deficient for purposes of due process, they are immune from suit under the doctrine of qualified immunity.  ECF No. 76 at 11.

In the context of section 1983 claims, qualified immunity shields government actors from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.*

In evaluating a governmental actor's assertion of qualified immunity, a court must determine (1) whether the facts, viewed in the light most favorable to the plaintiff, show that the defendant's conduct violated a constitutional right; and (2) whether the right was clearly established at the time of the alleged violation such that a reasonable person in the defendant's position would have understood that his actions violated that right.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part by Pearson*, 555 U.S. 223.  A court may, within its discretion, decide which of the two prongs should be addressed first in light of the particular circumstances of

the case. *Pearson*, 555 U.S. at 236. If the answer to either inquiry is "no," then the defendant is entitled to qualified immunity and may not be held personally liable for his or her conduct. *Glenn v. Wash. Cnty.*, 673 F.3d 864, 870 (9th Cir. 2011).

As to the first prong of the qualified immunity analysis, discussed above, this Court, viewing the evidence in the light most favorable to Plaintiff, is unable to conclude that Defendants provided Plaintiff adequate pretermination process.

As to the second prong, this Court finds Defendants' argument unavailing. In short, Defendants assert that because due process is a flexible concept and the amount of protection depends on the particular situation at hand, Dr. Busey's due process rights cannot have been "clearly established" and thus Defendants' actions were objectively reasonable. ECF No. 76 at 11. If this argument had merit, government actors would *always* be shielded from due process liability.

Rather, at the time of the events in question, the Supreme Court's decision in *Loudermill* had clearly established the right to "some kind of a hearing" prior to the discharge of an employee who has a constitutionally protected property interest in his employment. 470 U.S. at 542. The indispensable requirements of this right are notice of the charges, an explanation of the employer's evidence, and an opportunity to present reasons why the proposed action not be taken. *Id.* at 546; *see also Gilbert v. Homar*, 520 U.S. 924, 929 (1997) ("In *Cleveland Bd. of Ed. v.*

ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 21

*Loudermill*, . . . we held that pretermination process [of a public employee dismissable only for cause] need only include oral or written notice of the charges, an explanation of the employer's evidence, and opportunity for the employee to tell his side of the story.").

Given that Dr. Busey's due process rights as a certificated public employee were clearly established decades earlier by *Loudermill* and reaffirmed by subsequent case law, this Court cannot say, viewing the facts in the light most favorable to Dr. Busey, that a reasonable official in the position of the Board members would have thought the process afforded was constitutionally sufficient such that he or she should be entitled to qualified immunity.

Accordingly, Defendants' motion for summary judgment on Plaintiff's section 1983 claim (ECF No. 76) is **DENIED**.

### B. State Law Claims

#### 1. Statutory Due Process

Plaintiff's complaint requests the Court enter declaratory judgment that Defendants violated RCW 28A.405.300 and that Plaintiff remained employed and entitled to compensation under his employment contract until June 30, 2015.

RCW chapter 28A.405 governs the process of terminating certificated school district staff. Specifically, RCW 28A.405.300 provides the following process:

ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 22

In the event it is determined that there is probable cause or causes for a . . . superintendent, or other certificated employee, holding a position as such with the school district, hereinafter referred to as "employee", to be discharged or otherwise adversely affected in his or her contract status, such employee shall be notified in writing of that decision, which notification shall specify the probable cause or causes for such action. . . . Such notices shall be served upon that employee personally, or by certified or registered mail, or by leaving a copy of the notice at the house of his or her usual abode with some person of suitable age and discretion then resident therein. Every such employee so notified, at his or her request made in writing and filed with the president, chair of the board or secretary of the board of directors of the district within ten days after receiving such notice, shall be granted opportunity for a hearing pursuant to RCW 28A.405.310 to determine whether or not there is sufficient cause or causes for his or her discharge or other adverse action against his or her contract status.

RCW 28A.405.300.  If the employee is not provided timely notice or an opportunity for hearing, "such employee shall not be discharged or otherwise adversely affected in his or her contract status for the causes stated in the original notice for the duration of his or her contract."  *Id.*  Conversely, if an employee is provided notice and the opportunity for hearing and does not request a hearing, "such employee may be discharged or otherwise adversely affected as provided in the notice served upon the employee."  *Id.*

Regarding the substance of the notice, the Washington Supreme Court has noted, this statutory scheme is "remarkably clear": the school district must notify the employee that it has probable cause to discharge the employee and the notice must specify the cause or causes. *Martin v. Dayton Sch. Dist. No. 2*, 85 Wash.2d

ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 23

411, 412 (1975) (interpreting RCW 28A.58.450, which was later recodified as RCW 28A.405.300). "[The notice] need do no more, but it must reflect a decision of probable cause, not a judgmental conclusion that the board's mind is closed." *Id.*

The statute does not explicitly define what constitutes "timely notice;" however, it does state that an employee has ten days after notice is provided to request a hearing. If no hearing is requested within this ten day period, the employee may then be discharged as provided in the notice. *See* RCW 28A.405.300. Thus, in effect, it appears from the language of the statute that timely notice is at least ten days before any discharge, during which period the employee may request a hearing. That being said, the Washington Supreme Court case law on this issue, discussed below, seems to call into doubt the necessity of timely notice, at least where the deficiency does not prejudice the employee.

In *Martin v. Dayton School District No. 2*, 85 Wash.2d 411 (1975), the Washington Supreme Court, sitting en banc, reversed an appellate decision awarding a school district employee reinstatement to his job (damages) after he was given deficient notice of discharge. The school district sent written notice to plaintiff that it had decided to terminate his employment. *Martin*, 85 Wash.2d at 412. Realizing the deficiency of the notice—which "did not notify [the employee] of his right to a hearing before discharge" and was "not couched in terms of

ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 24

probable cause," *Martin v. Dayton School Dist. No. 2*, 10 Wash.App. 191, 192 (1973)—the district sent a second notice nine days later in an attempt to cure the initial error.    Both notices were appealed, and the superior court, after reviewing the charges, determined the school district had probable cause for its discharge determination.  *Martin*, 85 Wash.2d at 413.  The Supreme Court, concluding that Plaintiff had not been prejudiced as he had been given opportunity to challenge the school district's probable cause finding before the superior court, reversed the contrary appellate court decision and affirmed the trial court's decision in favor of the school district.  *Id.*

Although the precise holding of the *Martin* decision was that the school board did not lose jurisdiction to cure its discharge notice after the employee immediately appealed the first notice, several points from the decision—and examination of the appellate decision it overturned—are relevant to the Court's determination here.

First, the *Martin* Court was analyzing substantially similar statutory language as the statute that is now before this Court.  Thus, its decades old statutory analysis is still relevant to this Court's decision.

Second, the *Martin* Court found that a defective discharge notice—which definitively stated the discharge decision and failed to provide a right to a hearing before discharge—could later be cured by a legally sufficient notice.  This point is

especially relevant as the statutory language seemingly provides no room for error on the part of the school district.

Third, the *Martin* Court—despite the appellate court's express invocation of *Foster v. Carson School District 301*, 63 Wash.2d 29 (1963) and determination that *Foster* controlled—declined to address its previous opinion.  In *Foster*, a teacher had similarly been discharged without an opportunity for a hearing.  The *Foster* Court, interpreting a similar version of the statute, held that the notice was not "timely" since the discharge was made effective immediately and therefore no opportunity was afforded for a hearing before it became final: "The statute is clear and unambiguous. If a board attempts to discharge a teacher without giving him notice of its finding of probable cause and an opportunity to request a hearing ten days before his discharge becomes effective, such employee shall not be discharged for the duration of his or her contract."  *Foster*, 63 Wash.2d at 32.  In reaching its holding, the *Foster* Court noted the following:

> The statute expressly provides that if notice of probable cause and an opportunity for hearing is not timely given, a teacher shall not be discharged for the duration of his or her contract. It was the evident intention of the legislature to protect employees of school districts from arbitrary dismissals such as that which was attempted in this case, and it is also evident that the legislature determined that the only effective way to afford this protection was to require school boards to give an opportunity to present evidence and argument before making a decision to discharge a teacher.

ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 26

*Id.* at 31.  The *Foster* Court concluded that, when notice is not timely given, damages are appropriate.  *Id.* at 32.  In *Martin*, the Court did not address the *Foster* decision or the timeliness provision of the notice requirement in general.

Finally, and most telling, the *Martin* Court, finding that the employee had not been prejudiced by the initially deficient notice, overturned the appellate court's decision to award damages for violating the statute.  The Court cited to *Pierce v. Lake Stevens School District 4*, 84 Wash.2d 772, 782 (1974), for the proposition that, even where a discharge notice is deficient, there is no deprivation of any rights where the notice does not prejudice the employee.  For instance, in *Pierce*, the state superior court conducted a de novo hearing and the employee had an opportunity to challenge the school district's probable cause finding.  84 Wash.2d at 782.  Similarly, in *Martin*, the employee sought review of the district's cause for his discharge and the superior court found the probable cause sufficient.

In sum, although RCW 28A.405.300 at first blush appears to entitle certificated employees, like Dr. Busey, with even greater pretermination rights than *Loudermill*, the Washington Supreme Court has otherwise interpreted the necessity of strict compliance with its provisions.  This Court's review of the rather scarce case law on this issue from Washington's highest court demonstrates that violation of the statute's provisions does not necessarily deprive an employee of any rights

1    so long as the employee is given adequate opportunity to dispute the probable

2    cause supporting his discharge, even if this opportunity occurs post-termination.

3        Here, Defendants contend their January 30 letter satisfied RCW

4    28A.405.300: the District sent Dr. Busey the letter, cited the specific statute at

5    issue, and advised Dr. Busey of his right to appeal.  Dr. Busey chose not to appeal

6    the Board's probable cause determination and similarly declined a subsequent

7    invitation to request a hearing before the Board.  ECF No. 76 at 17.  In response,

8    Plaintiff highlights that the notice and process afforded him occurred after the

9    Board had decided to terminate his employment.  ECF No. 82 at 14, 20.

10       This Court finds Defendants are entitled to summary judgment on this claim.

11   Although the Board made its decision to terminate Dr. Busey on January 22, 2013,

12   which decision was effective immediately, it subsequently sent Dr. Busey written

13   notice of probable cause for its determination.  In this notice, the Board explained

14   the basis for its probable cause determination, cited to RCW 28A.405.300, and

15   advised Dr. Busey of his right to challenge the probable cause finding.  Several

16   weeks later, Mr. Stevens, on behalf of Defendants, invited Dr. Busey to request a

17   hearing before the Board to challenge the Board's letter.  Dr. Busey neither availed

18   himself of the opportunity for a hearing before the Board nor appealed the Board's

19   probable cause determination.  Indeed, his Complaint does not seek review of the

20   sufficiency of the Board's probable cause determination.

ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 28

Although Defendants initially provided deficient notice under the statute, their letter of January 30, if not timely, was substantively adequate. Further, Dr. Busey was not prejudiced by the initial deficiency as he was given ample notice of the opportunity to dispute the probable cause supporting his discharge and did not avail himself of such an opportunity, either before the Board or this Court. Although the language in RCW 28A.405.300 seemingly does not allow for such post-deprivation process as an adequate substitute, this Court is bound by the Washington Supreme Court's interpretation of its state's statutes. Accordingly, Defendants' motion as to this claim (ECF No. 76) is **GRANTED**.

### 2. Marital Status Discrimination

Plaintiff alleges the Richland School District and individual Board members discharged him because of his marital status in violation of WLAD.

Under the WLAD, "[i]t is an unfair practice for any employer . . . to discharge or bar any person from employment because of . . . marital status . . . ." RCW 49.60.180(2). At trial, the plaintiff must prove that his protected status was a "substantial factor" in an employer's adverse employment action. *Scrivener v. Clark Coll.*, 181 Wash.2d 439, 444 (2014). However, to overcome summary judgment, a plaintiff need only show that a reasonable jury could find his or her protected trait was a substantial factor motivating the employer's adverse actions.

ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 29

*Id.* at 445.  "[S]ummary judgment to an employer is seldom appropriate in the WLAD cases because of the difficulty of proving a discriminatory motivation."  *Id.*

When confronted with a summary judgment motion, a WLAD plaintiff is presented with a choice: either he may produce direct evidence of discriminatory intent or, lacking such direct evidence, proceed using the burden-shifting framework, announced by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *Scrivener*, 181 Wash.2d at 445; *Alonso v. Qwest Commc'ns Co., LLC*, 178 Wash.App. 734, 743 (2013); *see also Kastanis v. Educ. Emps. Credit Union*, 122 Wash.2d 483 (1993), *amended*, 122 Wash.2d (1994) ("The *McDonnell Douglas* standard and the direct evidence method are merely alternative ways of establishing a prima facie case.").

Under the direct evidence test, the court determines whether the WLAD plaintiff has provided direct evidence that (1) the defendant employer acted with a discriminatory motive and (2) the discriminatory motivation was a significant or substantial factor in an employment decision.  *Alonso*, 178 Wash. App. at 744 (citing *Kastanis*, 122 Wash.2d 483).  Direct evidence "includes discriminatory statements by a decision maker and other smoking gun evidence of discriminatory motive."  *Fulton v. State*, 169 Wash. App. 137, 148 n. 17 (2012).  A defendant may then rebut this showing with evidence that "the same decision would have been reached absent the discriminatory factor."  *Kastanis*, 122 Wash. 2d at 491.

Here, Plaintiff presented direct evidence that Defendants acted with a discriminatory motive and that such motivation was a substantial or significant factor in their employment decision. In its letter of January 30, 2013, the Board specifically stated that it based its termination decision at least in part on Plaintiff's marital status: the Board twice classified Plaintiff's conduct as engaging in an "extramarital affair" and further cited to the fact that Plaintiff met Ms. Hamilton "while [he] was married." ECF No. 78-3 at 3. Express invocation of a protected class—Plaintiff's married status—highlights the inappropriateness of these statements. Moreover, these statements, in a letter signed by Mr. Jansons on behalf of the Board, were made by the decisionmaker responsible for Dr. Busey's termination. *Fulton*, 169 Wash. App. at 148 n.17.

In response to Plaintiff's charge, Defendants maintain they would have terminated Dr. Busey even if he had been unmarried. Defendants cite to Dr. Busey's sexual relationship with Ms. Hamilton, a subordinate, while school was in session; Dr. Busey's use of school equipment including email and his district-issued cell phone to facilitate their off-campus meetings, which violated District policy; and the negative impact Dr. Busey's conduct would have on his effectiveness as a superintendent, most notably how his staff might view him differently. ECF No. 76 at 15.

1    Plaintiff disputes Defendants' proffered reasons.  Regarding his sexual

2  relationship with Ms. Hamilton, Plaintiff contends nothing in his contract prohibits

3  a consensual sexual relationship with other district employees over whom he

4  exercised no direct authority and which occurred during permissible personal

5  breaks and outside of school hours.  ECF No. 82 at 18.  Regarding use of district

6  equipment, Plaintiff notes that no one to his knowledge had been terminated, let

7  alone disciplined, for violating these policies.  *Id.*

8    Viewing the evidence in the light most favorable to Dr. Busey, as this Court

9  must, this Court finds a reasonable jury could find Dr. Busey's marital status was a

10  substantial factor motivating the Board's employment decision.  Although

11  Defendants presented several seemingly legitimate non-discriminatory, conduct

12  based reasons for Dr. Busey's termination, especially that Dr. Busey had engaged

13  in an undisclosed relationship with a subordinate employee, it is for a jury to weigh

14  the evidence and decide whether Plaintiff's direct evidence of discrimination and

15  evidence discounting Defendants' reasoning demonstrates his marital status was a

16  substantial factor motivating Defendants' employment decision.  Accordingly,

17  Defendants' motion for summary judgment on this claim (ECF No. 76) is

18  **DENIED**.

19  ///

20  ///

ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 32

### 3.  Wage Law Claim

Plaintiff alleges that Defendants have unlawfully withheld his wages in violation of RCW 49.48.010 and 49.52.070.

Under RCW 49.48.010, when an employee ceases to work for an employer, whether by discharge or voluntary withdrawal, the employer must pay the employee the wages due to him or her.  *Durand v. HIMC Corp.*, 151 Wash.App. 818, 829 (2009).  The Washington Legislature has provided both civil and criminal remedies if an employer willfully refuses to pay wages.  *Shilling v. Radio Holdings, Inc.*, 136 Wash.2d 152, 157 (1998).  Under RCW 49.52.050(2), an employer is guilty of a misdemeanor if it "willfully and with intent to deprive the employee of any part of his or her wages, [pays] an employee a lower wage than the wage such employer is obligated to pay such employee by any statute, ordinance, or contract."  RCW 49.52.070 provides a corresponding civil remedy against the employer: "Any employer . . . who shall violate any of the provisions of [RCW 49.52.050(2)] shall be liable in a civil action by the aggrieved employee or his or her assignee to judgment for twice the amount of wages unlawfully rebated or withheld by way of exemplary damages, together with costs of suit and a reasonable sum for attorney's fees."  *See also Schilling*, 136 Wash.2d at 158.

The critical determination in these cases is whether non-payment is "willful."  *Id.* at 159.  Washington courts have generally construed willful to mean

1    a knowing and intentional act of a free agent.  *Id.* at 159-60.  In contrast, an

2    employer's failure to pay wages is not willful when it is either due to (1)

3    carelessness or inadvertence or (2) the existence of a bona fide dispute.  *Id.* at 160;

4    *see also Failla v. FixtureOne Corp.*, 181 Wash.2d 642, 655 (2014).  To qualify as a

5    "bona fide" dispute, it must be "fairly debatable" as to whether an employment

6    relationship exists or whether the wages must be paid.  *Schilling*, 136 Wash.2d at

7    161.  Generally, the issue of whether the withholding of wages was "willful" is a

8    question of fact; however, if reasonable minds could reach but one conclusion from

9    those facts, the issue may be decided as a matter of law.  *Failla*, 181 Wash.2d at

10   655.

11       Here, Defendants contend that even if Dr. Busey's termination was not

12   effective, a bona fide dispute existed regarding the payment of wages.  ECF No. 76

13   at 16.  In response, Plaintiff questions whether the Board members genuinely

14   thought there was a bona fide dispute as to whether Plaintiff was still employed in

15   light of their alleged violation of RCW 28A.405.300.  ECF No. 82 at 19-20.

16       This Court finds Defendants are entitled to summary judgment on this claim

17   as reasonable minds could reach but one conclusion from the evidence presented.

18   Any dispute as to the employment relationship between Defendants and Plaintiff

19   was bona fide.  Strict compliance with RCW 28A.405.300 appears unnecessary

20   under Washington Supreme Court precedent where the employee has the

ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 34

opportunity to avail himself of post-deprivation process.  Even when viewing the evidence in the light most favorable to Plaintiff, a reasonable jury could reach but one conclusion: a bona fide dispute existed as to Plaintiff's continued employment as Defendants genuinely believed Plaintiff's discharge was effective.

To the extent Plaintiff is asserting that a jury award of damages pursuant to his section 1983 or WLAD claims would lend support for wrongful withholding double damages under RCW 49.52.050, these claims are inapplicable.

> The key word in the statute is "obligated." If the Washington legislature intended for the provision to apply to a situation such as Plaintiffs', it could have stated that any employer who violates any statute is subject to double damages. The insertion of the word "obligated" indicates a pre-existing duty imposed by contract or statute to pay specific compensation. Thus, a willful and intentional withholding of accrued pay legally owed the employee would subject the employer to double damages. Here, the Defendant's "obligation" to pay Plaintiffs the specific amount at issue had not legally accrued prior to the jury verdict. It did not stem from a "statute, ordinance, or contract;" rather, it resulted from a retrospective jury verdict.

*Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1203 (9th Cir. 2002). The Ninth Circuit's reasoning in *Hemmings*, issued in the context of wage discrimination, is instructive here: a retrospective jury award for violation of WLAD does not trigger RCW 49.52.050 as WLAD damages are not wages the employer was "obligated" to pay.  *See id.* ("Washington courts have not extended RCW § 49.52.050 to situations where employers violate anti-discrimination statutes."); *Clipse v. Commercial Driver Servs., Inc.*, 189 Wash. App. 776, 469-70 (2015) (citing

ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 35

*Hemmings*, 285 F.3d at 1203-04, and holding that RCW 49.52.050 is inapplicable to damages under the WLAD).  The reasoning in *Hemmings* applies to Plaintiff's section 1983 claim as well; that is, if a jury were to find Plaintiff entitled to compensatory damages for violation of section 1983, this award would similarly not stem from a "statute, ordinance, or contract."  *See Hemmings*, 285 F.3d at 1203.

Alternatively, as stated above, a bona fide dispute existed as to Plaintiff's continued employment relationship with the School District; thus, no reasonable jury could find willful withholding of wages here.  *Id.* at 1204.

Accordingly, Defendants' motion for summary judgment on this claim (ECF No. 76) is **GRANTED**.

///

///

///

///

///

///

///

///

///

ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 36

**IT IS ORDERED:**

Defendants' Motion for Partial Summary Judgment (ECF No. 76) is **DENIED in part and GRANTED in part**.  Defendants' motion is **GRANTED** as to Plaintiff's claims for declaratory judgment under RCW 28A.405.300 and withholding of wages under RCW 49.48.010 and 49.52.070.  Defendants' motion as to all other claims is **DENIED** as indicated herein.

The District Court Executive is directed to enter this Order and provide copies to counsel.

**DATED December 22, 2015.**



THOMAS O. RICE
United States District Judge

ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 37