1

2

3

4

5

6

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

7   JAMES BUSEY, an individual,

8                               Plaintiff,

9        v.

10  RICHLAND SCHOOL DISTRICT,
    RICHARD JANSONS, HEATHER
11  CLEARY, MARY GUAY, RICK
    DONAHOE, and PHYLLIS
12  STRICKLER,

13                              Defendants.

NO:  2:13-CV-5022-TOR

ORDER GRANTING
RECONSIDERATION AND
AMENDING THE SUMMARY
JUDGMENT ORDER

14

15        BEFORE THE COURT is Defendants' Motion for Reconsideration Re: ECF

16  No. 90 (ECF No. 92). This matter was submitted for consideration without oral

17  argument. The Court—having reviewed the briefing, the record, and files therein—

18  is fully informed. For the reasons discussed below, the Court grants Defendants'

19  motion for reconsideration and amends the summary judgment order at ECF No.

20  90.

ORDER GRANTING RECONSIDERATION AND AMENDING THE
SUMMARY JUDGMENT ORDER ~ 1

**BACKGROUND**

This case concerns the termination of former Richland School District Superintendent, James Busey. Following his termination in the winter of 2013, Plaintiff filed suit against Richland School District and Richland School District Board members, asserting violations of procedural due process under 42 U.S.C. § 1983, the Washington Law Against Discrimination ("WLAD"), state wage law, and Washington's Public Records Act. ECF No. 1 at 14. Plaintiff also requests a declaratory judgment that he was terminated in violation of state law and that he remained employed under his employment contract through June 2015. *Id.* at 15.

On December 22, 2015, this Court granted in part and denied in part Defendants' motion for summary judgment. ECF No. 90. In relevant part, this Court declined to grant summary judgment in Defendants' favor on Plaintiff's procedural due process and discrimination claims. *Id.* The parties have since stipulated that Plaintiff's Public Records Act claim should be dismissed and the stipulated dismissal was granted. ECF No. 111.

In the instant motion for reconsideration, Defendants ask the Court to reconsider its denial of Defendants' summary judgment motion as it relates to Plaintiff's due process and marital discrimination claims. ECF No. 92. In so requesting this relief, Defendants present additional evidence and argument not previously presented to this Court. This Court directed Plaintiff to respond.

This Court grants Defendants' motion for reconsideration in part. Pursuant to Federal Rule of Civil Procedure 54(b), this Order amends and supersedes this Court's Order of December 22, 2015 (ECF No. 90). *See* Fed. R. Civ. P. 54(b) (permitting the court to revise a non-final order "at any time before the entry of judgment adjudicating all the claims and all the parties' rights and liabilities").

## FACTS[1]

Beginning on July 1, 2010, Plaintiff James Busey was employed as the Superintendent of Richland School District and subject to the Superintendent's Employment Contract. ECF No. 78-1 at 3-4 (Deposition of Dr. Busey); *see* ECF No. 1 at 18 (Employment Contract).

By November 2012, Dr. Busey and para-educator Debbie Hamilton had been involved in a romantic relationship for about one year. ECF No. 78-1 at 6. During that period, Dr. Busey and Ms. Hamilton frequently met off-campus between the hours of 8 a.m. and 3 p.m.[2] and would engage in sexual intercourse in Ms. Hamilton's car in the parking lots of a retirement home and church. *Id.* at 9-12.

---

[1] The following are the undisputed material facts unless otherwise noted.

[2] It is unclear whether Dr. Busey and Ms. Hamilton met during the school day at times other than designated breaks. Dr. Busey's deposition testimony merely states that the two "may" have met during the school day at times other than lunch. ECF

ORDER GRANTING RECONSIDERATION AND AMENDING THE
SUMMARY JUDGMENT ORDER ~ 3

Dr. Busey and Ms. Hamilton would communicate through the school district email system to arrange their off-campus meetings. *Id.* at 22. Dr. Busey would also text Ms. Hamilton on his cellular phone, either paid for or issued by the Richland School District. *Id.* at 23. By Dr. Busey's own admission, use of his district email and cell phone to arrange these meetings violated School Board Policy 9273, which prohibits use of district property and equipment for "entertainment, personal benefit or gain," and which policy applied to Dr. Busey. *Id.* at 21-22, 24. That being said, Dr. Busey maintains that no employee had ever been terminated or even disciplined for using district email, cell phones, computers, or other equipment to simply communicate or arrange meetings for personal purposes. ECF No. 85 at 2 (Busey Declaration).[3]

_____

No. 78-1 at 9. Dr. Busey's declaration explains that they met during lunch breaks, as well as other designated breaks. ECF No. 85 at 2. When considering a motion for summary judgment, this Court must make all reasonable inferences in favor of the non-moving party, which here is Dr. Busey.

[3] In their reply briefing, Defendants object to several statements in Dr. Busey's declaration as lacking foundation, speculative, and containing inadmissible opinion and hearsay. ECF No. 87 at 8-10. To the extent Dr. Busey's declaration contains inadmissible hearsay, this Court does not rely on these statements in ruling on

ORDER GRANTING RECONSIDERATION AND AMENDING THE SUMMARY JUDGMENT ORDER ~ 4

On November 8, 2012, Richland School District General Counsel, Galt Pettett, advised Dr. Busey that he had learned Dr. Busey and a para-educator at Jefferson Elementary School were involved in a relationship. ECF No. 78-1 at 5-6. Dr. Busey acknowledged his relationship with Ms. Hamilton. *Id.* at 45. Mr. Pettett advised Dr. Busey to report the matter to Rick Jansons, the chair of the Richland School District Board. *Id.* at 43. Subsequently, Dr. Busey met with Mr. Jansons and disclosed his "ongoing relationship" with Ms. Hamilton. *Id.* at 45-47. At the time, Dr. Busey did not explicitly tell Mr. Jansons it was a sexual relationship, *id.* at 47; however, Dr. Busey disputes that Mr. Jansons could have had any other understanding, ECF No. 85 at 3.

After Dr. Busey's disclosure, Mr. Jansons and Tony Howard of Human Resources interviewed a number of people about Dr. Busey's relationship with Ms. Hamilton. ECF No. 78-1 at 50-51. Near the end of November, Mr. Jansons advised

---

summary judgment; however, to the extent Dr. Busey's declaration is based on personal knowledge, this Court may consider these matters. *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.").

ORDER GRANTING RECONSIDERATION AND AMENDING THE SUMMARY JUDGMENT ORDER ~ 5

Dr. Busey that the investigation had been completed and that Dr. Busey's conduct did not give rise to any breaches of contract or policy. *Id.* at 52. At that point in time, Dr. Busey had not disclosed the off-campus meetings with Ms. Hamilton during the school day or his communications with her through district email and cell phone. *Id.* at 53-54 ("Q: Okay, and as of December 7th, 2012, had you advised Rick Jansons that you had been meeting with Ms. Hamilton between the hours of 8 a.m. and 3 p.m. on school days in a parking lot for the purpose of having sexual intercourse? A. No. Q. Do you know whether, as of December 7th, 2012, Rick Jansons was aware of the personal e-mails that you and Ms. Hamilton had been exchanging through your Richland School District accounts over the past year? . . . A. I did not know that.").

At some point between December 7, 2012, and December 10, 2012, Dr. Busey and Ms. Hamilton's relationship became public after information was given to the Tri-City Herald, a local newspaper. *Id.* at 56. On December 10, 2012, Richland School District placed Dr. Busey on paid administrative leave. *Id.* at 55.

Richland School District directed Alan Key—an employee of a third-party administrator responsible for managing insurance risk pools, including the insurance pool that insures Richland School District—to investigate allegations about Dr. Busey's conduct. ECF No. 84-4 at 2-4 (Key Deposition). Mr. Key interviewed Dr. Busey on January 21, 2013, which interview was recorded. ECF

ORDER GRANTING RECONSIDERATION AND AMENDING THE
SUMMARY JUDGMENT ORDER ~ 6

No. 78-2. Mr. Key started the interview by explaining he was asked by the School Board to conduct an investigation and, although "still in the middle of that investigation," he was meeting with Dr. Busey in order to "give [him] an opportunity to respond to what [Mr. Key was] investigating." *Id.* at 2. During the course of the interview the two discussed Dr. Busey's relationship with Ms. Hamilton; Dr. Busey's personal use of district equipment, including email and cell phone; and the possible impact the affair would have on Dr. Busey's job, including the perspective of Dr. Busey's staff. *See id.* at 2-42.

Mr. Key reported the results of his investigation to the Richland School District Board, ECF Nos. 78-5 at 4 (Key Deposition), and on January 22, 2013, the Board determined that it had probable cause to terminate Dr. Busey's employment, ECF No. 77 at 10; although, Dr. Busey disputes this characterization, ECF No. 83 at 10. In a press release, the Richland School District publicly announced its decision, indicating that it had "voted unanimously to terminate Dr. Busey as superintendent of the Richland School District." ECF No. 84-5. Three different media outlets reported that Dr. Busey's termination was effective immediately, which reports were accompanied by Mr. Jansons' statements. ECF Nos. 84-6, 84-

7, 84-8.[4] The Richland School District sent Dr. Busey notice on January 23, 2013,

that his insurance coverage would end "[d]ue to [his] termination," however, the

coverage was not set to expire until March 1, 2013. ECF No. 84-9 at 2.

On January 30, 2013, the Richland School District sent Dr. Busey a letter,

signed by Mr. Jansons, titled "Notice of Probable Cause for Discharge and

Nonrenewal Pursuant to RCW 28A.405.210 and RCW 28A.405.300." ECF No.

78-3. Based on the Board's review of all information from Mr. Key's investigation,

including comments made by Dr. Busey during the interview the week before, the

Board found Dr. Busey had engaged in conduct that "materially and substantially

affected" Dr. Busey's ability to perform his duties as Superintendent. *Id.* at 2.

Specifically, the Board found the following: that Dr. Busey had (1) engaged in "a

long-standing extramarital affair with a subordinate employee of the Richland

School District;" (2) engaged in inappropriate and unprofessional conduct with a

female professional "while . . . married;" (3) used district equipment for

"inappropriate personal reasons including pursuit of [his] inappropriate

---

[4] In Defendants' original statement of facts, they stated Dr. Busey was employed

until January 22, 2013. *See* ECF No. 77 at 1. However, they have since clarified

that Dr. Busey was paid through the end of February. *See* ECF No. 92-2 (Payroll

Record). That critical unrebutted fact necessitates the Court's reconsideration here.

ORDER GRANTING RECONSIDERATION AND AMENDING THE
SUMMARY JUDGMENT ORDER ~ 8

extramarital affair with a School District staff member;" (4) caused disruption and unnecessary stress at Ms. Hamilton's work site, an elementary school in the School District; (5) threatened to go to the press and cause harm to the School District if he was not reinstated or paid the full amount of his employment contract; (6) informed the press of an issue not shared with the Board; and (7) created the appearance of a conflict of interest and exposed the School District to potential liability. *Id.* at 3. The Board concluded that probable cause existed for Dr. Busey's discharge, and in the letter's closing, advised Dr. Busey of his right to challenge or appeal the discharge and suggested Dr. Busey consult with an attorney. *Id.*[5]

Dr. Busey received the letter on February 4, 2013. ECF No. 78-1 at 57. On February 14, 2013, Dr. Busey's attorney, Brian Iller, sent a letter to Richland School District's attorney, Greg Stevens, asserting that Dr. Busey had not been

---

[5] Defendants cite to Dr. Busey's employment contract, which required that he "devote his full time, skill, labor and attention" to his employment as Superintendent. ECF No. 1 at 20. Although the Board found the above listed conduct "materially and substantially affected [Dr. Busey's] ability to perform the duties of Superintendent of schools," ECF No. 78-3 at 2, the Board did not cite this provision of the contract in support of its termination decision. Thus, it is unclear if this provision motivated the Board's discharge decision.

ORDER GRANTING RECONSIDERATION AND AMENDING THE
SUMMARY JUDGMENT ORDER ~ 9

1   given a pre-termination hearing and consequently remained employed as

2   Superintendent. ECF No. 1 at 30-39. In response, Mr. Stevens acknowledged Dr.

3   Busey's right to a hearing before the Board, pursuant to Dr. Busey's employment

4   contract, and invited Dr. Busey to let the Board know if he would like a hearing.

5   ECF No. 78-6.  Mr. Iller responded on February 25, 2013, indicating that Dr.

6   Busey saw "no point" in having a hearing considering the circumstances. ECF No.

7   78-7. That same day, Dr. Busey filed suit with this Court. ECF No. 1.

8       Dr. Busey was paid through the end of February and his insurance coverage

9   continued until March 1. *See* ECF Nos. 84-9; 92-2 (Payroll Record).

**DISCUSSION**

11       Summary judgment may be granted to a moving party who demonstrates

12   "that there is no genuine dispute as to any material fact and the movant is entitled

13   to judgment as a matter of law."  Fed. R. Civ. P. 56(a). The moving party bears the

14   initial burden of demonstrating the absence of any genuine issues of material fact.

15   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the

16   non-moving party to identify specific facts showing there is a genuine issue of

17   material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "The

18   mere existence of a scintilla of evidence in support of the plaintiff's position will

19   be insufficient; there must be evidence on which the jury could reasonably find for

20   the plaintiff." *Id.* at 252.

For purposes of summary judgment, a fact is "material" if it might affect the outcome of the suit under the governing law. *Id.* at 248. A dispute concerning any such fact is "genuine" only where the evidence is such that the trier-of-fact could find in favor of the non-moving party. *Id.* "[A] party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.* (internal quotation marks and alterations omitted); *see also First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968) (holding that a party is only entitled to proceed to trial if it presents sufficient, probative evidence supporting the claimed factual dispute, rather than resting on mere allegations). Moreover, "[c]onclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *see also Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081-82 (9th Cir. 1996) ("[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment.").

In ruling upon a summary judgment motion, a court must construe the facts, as well as all rational inferences therefrom, in the light most favorable to the non-moving party, *Scott v. Harris*, 550 U.S. 372, 378 (2007), and only evidence which would be admissible at trial may be considered, *Orr v. Bank of Am., NT & SA*, 285

F.3d 764, 773 (9th Cir. 2002). *See also Tolan v. Cotton*, 134 S. Ct. 1861, 1863 (2014) ("[I]n ruling on a motion for summary judgment, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." (internal quotation marks and brackets omitted)).

### A. Section 1983 Claim

Plaintiff alleges, pursuant to 42 U.S.C. § 1983, that the Board members violated his Fourteenth Amendment right to procedural due process by failing to provide him with an adequate pre-termination hearing.

A cause of action pursuant to section 1983 may be maintained "against any person acting under color of law who deprives another 'of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 887 (9th Cir. 2003) (quoting 42 U.S.C. § 1983). The rights guaranteed by section 1983 are "liberally and beneficently construed." *Dennis v. Higgins*, 498 U.S. 439, 443 (1991) (quoting *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 684 (1978)).

Defendants do not appear to dispute that the Board members acted under color of state law. *See* ECF No. 76. Accordingly, the only issue for this Court's review is whether a genuine issue of material fact exists as to whether they deprived Plaintiff of his constitutional right to procedural due process.

//

ORDER GRANTING RECONSIDERATION AND AMENDING THE SUMMARY JUDGMENT ORDER ~ 12

### 1. Adequacy of Pretermination Procedures

The Fourteenth Amendment prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV. "Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property." *Carey v. Piphus*, 435 U.S. 247, 259 (1978).

A procedural due process claim has two discrete elements. First, the court "asks whether there exists a liberty or property interest which has been interfered with by the State." *Vasquez v. Rackauckas*, 734 F.3d 1025, 1042 (9th Cir. 2013) (internal quotation marks and citation omitted). Second, the court "examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Id.* "[T]he Due Process Clause provides that certain substantive rights—life, liberty, and property—cannot be deprived except pursuant to constitutionally adequate procedures." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985).

Contrary to Plaintiff's briefing, what process remains due is a question of federal, not state, law. *Id.* (holding that what process is constitutionally sufficient is "not to be found in the [state] statute"); *see also Ford v. Wainwright*, 477 U.S. 399, 428-29 (1986) ("[R]egardless of the procedures the State deems adequate for determining the preconditions to adverse official action, federal law defines the

1   kind of process a State must afford prior to depriving an individual of a protected

2   liberty or property interest."). "[A] plaintiff is not necessarily entitled, as a matter

3   of *federal due process*, to all of the procedures provided by state law." *Whalen v.*

4   *Mass. Trial Court*, 397 F.3d 19, 22 n.2 (1st Cir. 2005) (emphasis added). Rather,

5   what process is constitutionally sufficient is a matter of federal law. *See id.* at 26

6   n.6 ("Although a property right in employment must arise from state law, what

7   process is due is a question of federal law."); *Ciambriello v. County of Nassau*, 292

8   F.3d 307, 321 n.7 (2d Cir. 2002) ("[T]he issue of what process is due under the

9   Fourteenth Amendment is strictly a matter of federal, not state, law."); *Gray v.*

10  *Laws*, 51 F.3d 426, 438 (4th Cir. 1995) ("The Constitution's due process

11  requirements are defined by the Constitution and do not vary from state to state on

12  the happenstance of a particular state's procedural rules."). To find otherwise

13  would directly contravene clear precedent holding that violations of state law do

14  not give rise to section 1983 claims. *See, e.g.*, *Ove v. Gwinn*, 264 F.3d 817, 824

15  (9th Cir. 2001) ("To the extent that the violation of a state law amounts to the

16  deprivation of a state-created interest that reaches beyond that guaranteed by the

17  federal Constitution, Section 1983 offers no redress.").

18      As an initial matter, there can be no dispute that Dr. Busey's interest in

19  continued employment is constitutionally protected. While the U.S. Constitution

20  does not define protected property interests, state law can. *Loudermill*, 470 U.S. at

ORDER GRANTING RECONSIDERATION AND AMENDING THE
SUMMARY JUDGMENT ORDER ~ 14

538-39. RCW 28A.405.210 expressly protects certificated employees from termination without cause. Defendants do not attempt to dispute that Washington law creates a constitutionally protected interest in continued employment for certificated teachers, like Dr. Busey.

It is similarly clear that Dr. Busey was due some pretermination process before he was ultimately terminated. It is well-settled that a public employee with a constitutionally-protected interest in his or her continued employment is entitled to some form of process prior to being terminated. *Loudermill*, 470 U.S. at 542. Generally, due process requires that an employee facing termination receive "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Id.* at 546. And, as the Supreme Court emphasized, an employee's opportunity to be heard must occur *before* the employee is terminated. *Id.*

In the public employment context, "[t]he need for some form of pretermination hearing . . . is evident from a balancing of the competing interests at stake." *Id.* at 542. The employee has a significant interest in retaining employment, the government has an interest in expeditiously removing unsatisfactory employees and avoiding administrative burdens, and both have an interest in preventing an erroneous termination. *Id.* at 542-43. "[S]ome opportunity for the employee to present his side of the case is recurringly of obvious value in reaching an accurate

ORDER GRANTING RECONSIDERATION AND AMENDING THE
SUMMARY JUDGMENT ORDER ~ 15

1    decision." *Id.* at 543. "Even where the facts are clear, the appropriateness or

2    necessity of the discharge may not be; in such cases, the only meaningful

3    opportunity to invoke the discretion of the decisionmaker is likely to be *before* the

4    termination takes effect." *Id.* (emphasis added).

5        Here, Defendants assert that Dr. Busey's termination went into effect on

6    February 15, 2013, which was 10 days after Dr. Busey received notice of probable

7    cause for his termination. In support, Defendants cite to state law, which expressly

8    states that an employee such as Dr. Busey remains employed until he is given an

9    opportunity to request a pre-termination hearing, and that Dr. Busey, according to

10    the payroll records, was paid through the month of February 2013. ECF No. 92 at

11    2-3. Plaintiff, however, maintains that his employment was terminated on January

12    22, 2013: the date the press reported that his employment was terminated effective

13    immediately and the School District issued a press release announcing his

14    termination. ECF No. 99 at 2.

15        This Court finds there is no genuine dispute that Dr. Busey's employment

16    was terminated on or after February 15, 2013. First, pursuant to RCW

17    28A.405.300, Dr. Busey could not have been terminated before he was given

18    notice of probable cause of his termination and provided opportunity for a hearing.

19    In other words, any termination before this date would not have been given effect.

20    Here, Dr. Busey received notice of probable cause for his termination on February

ORDER GRANTING RECONSIDERATION AND AMENDING THE
SUMMARY JUDGMENT ORDER ~ 16

4, 2013. Thus, he had 10 days from this date to request a hearing in writing in front of an independent hearing officer. *See* RCW 28A.405.300. Second, Dr. Busey was paid through the end of February 2013 and his insurance coverage did not expire until March 1. Although Plaintiff highlights media coverage indicating this his termination was effective immediately, the final termination decision, after the Board's initial probable cause finding, did not rest with the Board.[6] If Dr. Busey had timely requested a hearing, an independent hearing officer—appointed pursuant to RCW 28A.405.310(4)—would be responsible for the decision whether to restore Dr. Busey's employment or uphold the Board's probable cause finding and carry out the termination. *See* RCW 28A.405.310(8). Accordingly, this Court finds it is beyond dispute that Dr. Busey's employment was not terminated until at least February 15, 2013.

Keeping this termination date in mind, this Court finds a reasonable jury could reach but one conclusion: Defendants afforded Dr. Busey sufficient

─────────────────

[6] Even if Mr. Jansons, who had provided statements to several press outlets, had said that Dr. Busey's termination was "effective immediately," the final termination decision was not his or the Board's to make. Rather, even if the Board's mind was made up, an independent hearing officer would be responsible for the final decision. *See* RCW 28A.405.310.

ORDER GRANTING RECONSIDERATION AND AMENDING THE
SUMMARY JUDGMENT ORDER ~ 17

pretermination process before terminating his employment in February 2013.[7] Under the standard announced in *Loudermill*, Dr. Busey was entitled to some form of a pretermination hearing that consisted of notice, an explanation of the evidence against him, and an opportunity to be heard. Based on the evidence presented, even when viewed in the light most favorable to Dr. Busey, this Court finds no genuine issue of material fact as to whether Dr. Busey was afforded adequate due process.

First, there is no genuine dispute that Dr. Busey was given adequate notice of charges against him in the Board's January 30 letter. In this letter, titled "Notice of Probable Cause for Discharge and Nonrenewal Pursuant to RCW 28A.405.210 and RCW 28A.405.300," the Board explained that it had probable cause to terminate Dr. Busey's employment and detailed the results of its findings. *See* ECF No. 78-3.

Second, there is no genuine dispute that Dr. Busey was provided adequate notice of the Board's contemplation of the dismissal action in the Board's January 30 letter. In the Ninth Circuit, notice of an employer's intent to terminate is an

---

[7] Defendants' continue to assert that Mr. Key's interview of Dr. Busey, conducted on January 21, 2013, provided sufficient due process. Because disputed issues of material fact still surround the adequacy of that interview, the Court does not rest its summary judgment ruling on those events.

ORDER GRANTING RECONSIDERATION AND AMENDING THE
SUMMARY JUDGMENT ORDER ~ 18

essential component of pre-termination due process. *Matthews v. Harney Cty., Or., Sch. Dist. No. 4*, 819 F.2d 889, 892 (9th Cir. 1987) ("On the issue of notice, we read *Loudermill* to require, in advance of any pre-termination hearing (1) notice to the employee as to the pendency or contemplation of a dismissal action, and (2) notice as to the charges and evidence which give rise to that concern."). Here, the January 30 letter expressly stated that the Board was contemplating the discharge of Dr. Busey. *See* ECF No. 78-3.

Third, there is no genuine dispute that Dr. Busey was provided an adequate opportunity to respond to the charges against him and object to the necessity of a dismissal action. Pursuant to RCW 28A.405.300, Dr. Busey had 10 days to request a hearing in front of an independent hearing officer to argue that insufficient cause existed for his discharge after receiving notice of the Board's probable cause determination. Here, Dr. Busey had received the Board's letter on February 4, 2013. ECF No. 78-1 at 57. On February 21, 2013, after receiving a letter from Dr. Busey's attorney, Mr. Stevens, Richland School District's counsel, expressly invited Dr. Busey to let the Board know if he wanted a hearing. ECF No. 78-6. Four days later, on February 25, 2013, Dr. Busey's attorney responded on his behalf, declining to request a hearing. ECF No. 78-7. Importantly, Dr. Busey was paid through this date, ECF No. 92-2, and his insurance coverage continued beyond this date, ECF No. 84-9 at 2.

ORDER GRANTING RECONSIDERATION AND AMENDING THE
SUMMARY JUDGMENT ORDER ~ 19

1    In light of the following, this Court finds a reasonable jury could reach but

2    one conclusion, even when construing all evidence in the light most favorable to

3    Dr. Busey: Defendants afforded Dr. Busey adequate pretermination process

4    pursuant to the Supreme Court's ruling in *Loudermill*. Accordingly, Defendants'

5    motion for summary judgment on Plaintiff's due process claim (ECF No. 76) is

6    **GRANTED.**

7    **B. State Law Claims**

8        **1. Statutory Due Process**

9        Plaintiff's Complaint requests that the Court enter declaratory judgment that

10   Defendants violated RCW 28A.405.300 and that Plaintiff remained employed and

11   entitled to compensation under his employment contract until June 30, 2015.

12       RCW chapter 28A.405 governs the process of terminating certificated

13   school district staff. Specifically, RCW 28A.405.300 provides the following

14   process:

15       In the event it is determined that there is probable cause or causes for
         a . . . superintendent, or other certificated employee, holding a
16       position as such with the school district, hereinafter referred to as
         "employee", to be discharged or otherwise adversely affected in his or
17       her contract status, such employee shall be notified in writing of that
         decision, which notification shall specify the probable cause or causes
18       for such action. . . . Such notices shall be served upon that employee
         personally, or by certified or registered mail, or by leaving a copy of
19       the notice at the house of his or her usual abode with some person of
         suitable age and discretion then resident therein. Every such employee
20       so notified, at his or her request made in writing and filed with the
         president, chair of the board or secretary of the board of directors of

ORDER GRANTING RECONSIDERATION AND AMENDING THE
SUMMARY JUDGMENT ORDER ~ 20

the district within ten days after receiving such notice, shall be granted
opportunity for a hearing pursuant to RCW 28A.405.310 to determine
whether or not there is sufficient cause or causes for his or her
discharge or other adverse action against his or her contract status.

RCW 28A.405.300. If the employee is not provided timely notice or an

opportunity for hearing, "such employee shall not be discharged or otherwise

adversely affected in his or her contract status for the causes stated in the original

notice for the duration of his or her contract." *Id.* Conversely, if an employee is

provided notice and the opportunity for hearing and does not request a hearing,

"such employee may be discharged or otherwise adversely affected as provided in

the notice served upon the employee." *Id.*

Regarding the substance of the notice, the Washington Supreme Court has

noted, this statutory scheme is "remarkably clear": the school district must notify

the employee that it has probable cause to discharge the employee and the notice

must specify the cause or causes. *Martin v. Dayton Sch. Dist. No. 2*, 85 Wash.2d

411, 412 (1975) (interpreting RCW 28A.58.450, which was later recodified as

RCW 28A.405.300). "[The notice] need do no more, but it must reflect a decision

of probable cause, not a judgmental conclusion that the board's mind is closed." *Id.*

The statute does not explicitly define what constitutes "timely notice;"

however, it does state that an employee has ten days after notice is provided to

request a hearing. If no hearing is requested within this ten day period, the

ORDER GRANTING RECONSIDERATION AND AMENDING THE
SUMMARY JUDGMENT ORDER ~ 21

1   employee may then be discharged as provided in the notice. *See* RCW

2   28A.405.300. Thus, in effect, it appears from the language of the statute that timely

3   notice is at least ten days before any discharge, during which period the employee

4   may request a hearing.

5          If a hearing is timely requested, RCW 28A.405.310 governs the hearing

6   procedure. Under this statutory provision, a hearing officer is appointed as follows:

7   First, the school board and the employee can either each appoint one nominee to

8   choose the hearing officer or stipulate as to the identity of the hearing officer.

9   Second, assuming no stipulation, the nominees jointly appoint a hearing officer; if

10  the nominees are unable to come to a consensus, the presiding judge of the superior

11  court for the county in which the school district is located has the duty to appoint a

12  hearing officer. RCW 28A.405.310(4). After the hearing, during which the parties

13  may call witnesses and present evidence in accordance with RCW 28A.405.310,

14  the hearing officer issues his or her final decision. RCW 28A.405.310(7)(c).

15  Importantly, if the hearing officer rules in favor of the employee, the employee is

16  restored to his or her employment position. *Id.*

17         Here, Defendants contend their January 30 letter satisfied RCW

18  28A.405.300: the District sent Dr. Busey the letter, cited the specific statute at

19  issue, and advised Dr. Busey of his right to appeal. Dr. Busey chose not to appeal

20  the Board's probable cause determination and similarly declined a subsequent

ORDER GRANTING RECONSIDERATION AND AMENDING THE
SUMMARY JUDGMENT ORDER ~ 22

1  invitation to request a hearing. ECF No. 76 at 17. In response, Plaintiff highlights

2  that the notice and process afforded him occurred after the Board had decided to

3  terminate his employment as shown by its statements in several media outlets and

4  its own press release. ECF No. 82 at 14, 20.

5        This Court finds Defendants are entitled to summary judgment on this claim

6  as there is no genuine issue of material fact as to the Board's compliance with

7  RCW 28A.405.300. In a letter dated January 30, 2013, the Board notified Dr.

8  Busey in writing that it had probable cause to discharge Dr. Busey and detailed the

9  basis for its determination. ECF No. 78-3. After receiving this notice on February

10  4, 2013, Dr. Busey was afforded sufficient time to request a hearing and challenge

11  the Board's probable cause finding in front of an independent hearing officer

12  before his pay and insurance coverage were discontinued. Indeed, on February 21,

13  2013, Mr. Stevens, on behalf of Defendants, expressly invited Dr. Busey to request

14  a hearing before the Board to challenge the Board's letter, even though the 10 days

15  to request a hearing had already passed since Dr. Busey had received notice. *See*

16  ECF No. 78-6. On February 25, 2013, Dr. Busey's attorney expressly declined a

17  hearing on Dr. Busey's behalf. ECF No. 78-7.

18        In light of the foregoing, a reasonable jury could reach but one conclusion:

19  that Defendants complied with RCW 28A.405.300. Accordingly, Defendants'

20  motion as to this claim (ECF No. 76) is **GRANTED**.

ORDER GRANTING RECONSIDERATION AND AMENDING THE
SUMMARY JUDGMENT ORDER ~ 23

## 2.  Marital Status Discrimination

Plaintiff alleges the Richland School District and individual Board members discharged him because of his marital status in violation of the WLAD.

Under the WLAD, "[i]t is an unfair practice for any employer . . . to discharge or bar any person from employment because of . . . marital status . . . ." RCW 49.60.180(2). Marital status is defined as "the legal status of being married, single, separated, divorced, or widowed." RCW 49.60.040(17). Examples of marital discrimination include, but are not limited to, an employer's refusal to hire a single or divorced applicant because of a presumption that "married persons are more stable" or an employer's refusal to promote a married person because of a presumption that he or she "will be less willing to work late and travel." WAC 162-16-250.

To overcome summary judgment, a plaintiff must show that a reasonable jury could find his or her protected trait was a substantial factor motivating the employer's adverse actions. *Scrivener v. Clark Coll.*, 181 Wash.2d 439, 445 (2014). In such a situation, a WLAD plaintiff is presented with a choice: either he may produce direct evidence of discriminatory intent or, lacking such direct evidence, proceed using the burden-shifting framework, announced by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Scrivener*, 181 Wash.2d at 445; *Alonso v. Qwest Commc'ns Co., LLC*, 178

ORDER GRANTING RECONSIDERATION AND AMENDING THE SUMMARY JUDGMENT ORDER ~ 24

Wash.App. 734, 743 (2013); *see also Kastanis v. Educ. Emps. Credit Union*, 122 Wash.2d 483 (1993), *as amended by*, 122 Wash.2d (1994) ("The *McDonnell Douglas* standard and the direct evidence method are merely alternative ways of establishing a prima facie case.").

Under the direct evidence test, relevant here, the court determines whether the WLAD plaintiff has provided direct evidence that (1) the defendant employer acted with a discriminatory motive and (2) the discriminatory motivation was a significant or substantial factor in an employment decision. *Alonso*, 178 Wash. App. at 744 (citing *Kastanis*, 122 Wash.2d 483). Direct evidence "includes discriminatory statements by a decision maker and other smoking gun evidence of discriminatory motive." *Fulton v. State*, 169 Wash. App. 137, 148 n.17 (2012). A defendant may then rebut this showing with evidence that "the same decision would have been reached absent the discriminatory factor." *Kastanis*, 122 Wash.2d at 491.

This Court remains mindful that "[s]ummary judgment to an employer is seldom appropriate in the WLAD cases because of the difficulty of proving a discriminatory motivation." *Scrivener*, 181 Wash.2d at 445.

Here, Dr. Busey presented direct evidence that Defendants acted with a discriminatory motive and that such motivation was a substantial or significant factor in their employment decision. In its letter of January 30, 2013, the Board

1    specifically stated that it based its probable cause decision at least in part on

2    Plaintiff's marital status: the Board twice classified Plaintiff's conduct as engaging

3    in an "extramarital affair" and further cited to the fact that Plaintiff met Ms.

4    Hamilton "while [he] was married." ECF No. 78-3 at 3. Express invocation of a

5    protected class—Plaintiff's married status—highlights the inappropriateness of

6    these statements, especially where there is no apparent reason for including them in

7    the first instance. Moreover, these statements, in a letter signed by Mr. Jansons on

8    behalf of the Board, were made by the decisionmaker responsible for the probable

9    cause determination that led to Dr. Busey's ultimate termination. *Fulton*, 169

10   Wash. App. at 148 n.17.

11       In response to Plaintiff's charge, Defendants maintain they would have

12   terminated Dr. Busey even if he had been unmarried. Defendants cite to Dr.

13   Busey's sexual relationship with Ms. Hamilton, a subordinate, while school was in

14   session; Dr. Busey's use of school equipment including email and his district-

15   issued cell phone to facilitate their off-campus meetings, which violated District

16   policy; and the negative impact Dr. Busey's conduct would have on his

17   effectiveness as a superintendent, most notably how his staff might view him

18   differently. ECF No. 76 at 15.

19       Plaintiff disputes Defendants' proffered reasons. Regarding his sexual

20   relationship with Ms. Hamilton, Plaintiff contends nothing in his contract prohibits

ORDER GRANTING RECONSIDERATION AND AMENDING THE
SUMMARY JUDGMENT ORDER ~ 26

1   a consensual sexual relationship with other district employees over whom he

2   exercised no direct authority and which occurred during permissible personal

3   breaks and outside of school hours. ECF No. 82 at 18. Regarding use of district

4   equipment, Plaintiff notes that no one to his knowledge had been terminated, let

5   alone disciplined, for violating these policies. *Id.*

6        Before this Court considers whether a reasonable jury could find for Plaintiff

7   on his marital discrimination claim, the Court must determine whether Dr. Busey

8   has a viable claim in the first instance. As presented by Defendants, the threshold

9   issue is whether there is a relevant distinction here between Dr. Busey's marital

10  status and his conduct of engaging in an extramarital affair. ECF No. 92 at 20-21.

11       While an adverse employment action for conduct made without regard to an

12  individual's marital status would provide no basis for a marital discrimination

13  claim, this Court finds this cannot be the case when the status and conduct are so

14  directly linked. *See Veenstra v. Washtenaw Country Club*, 466 Mich. 155, 165

15  (2002) ("[A]dverse action against an individual for conduct, *without regard to a*

16  *protected status*, provides no basis for recourse under the Civil Rights Act."). In

17  such a case as this—where Dr. Busey's marital status was referenced multiple

18  times in the notice letter from the Board in connection with his conduct—this

19  Court is unable to distinguish the concepts of Dr. Busey's status as a married man

20  and his conduct of engaging in an "extramarital" affair. It is certainly reasonable to

ORDER GRANTING RECONSIDERATION AND AMENDING THE
SUMMARY JUDGMENT ORDER ~ 27

1  question why the Board expressly and repeatedly referenced Dr. Busey's marital

2  status if this protected trait did not motivate its employment decision.

3       Having found that Dr. Busey has stated a valid marital status claim, this

4  Court finds a reasonable jury could find Dr. Busey's marital status was a

5  substantial factor motivating the Board's employment decision. Although

6  Defendants presented several seemingly legitimate non-discriminatory, conduct-

7  based reasons for Dr. Busey's termination—especially that Dr. Busey had engaged

8  in an undisclosed relationship with a subordinate employee—it is for a jury to

9  weigh the evidence and decide whether Plaintiff's direct evidence of

10  discrimination and evidence discounting Defendants' reasoning demonstrates his

11  marital status was a substantial factor motivating Defendants' employment

12  decision. Accordingly, Defendants' motion for summary judgment on this claim

13  (ECF No. 76) is **DENIED**.

14       **3. Wage Law Claim**

15       Plaintiff alleges that Defendants have unlawfully withheld his wages in

16  violation of RCW 49.48.010 and 49.52.070.

17       Under RCW 49.48.010, when an employee ceases to work for an employer,

18  whether by discharge or voluntary withdrawal, the employer must pay the

19  employee the wages due to him or her. *Durand v. HIMC Corp.*, 151 Wash.App.

20  818, 829 (2009). RCW 49.52.070 provides the following civil remedy against the

ORDER GRANTING RECONSIDERATION AND AMENDING THE
SUMMARY JUDGMENT ORDER ~ 28

employer for unlawfully withholding wages: "Any employer . . . who shall violate any of the provisions of [RCW 49.52.050(2)] shall be liable in a civil action by the aggrieved employee or his or her assignee to judgment for twice the amount of the wages unlawfully rebated or withheld by way of exemplary damages, together with costs of suit and a reasonable sum for attorney's fees." *See Schilling v. Radio Holdings, Inc.*, 136 Wash.2d 152, 157-58 (1998).

The critical determination in these cases is whether non-payment is "willful." *Id.* at 159. Washington courts have generally construed willful to mean a knowing and intentional act of a free agent. *Id.* at 159-60. In contrast, an employer's failure to pay wages is not willful when it is either due to (1) carelessness or inadvertence or (2) the existence of a bona fide dispute. *Id.* at 160; *see also Failla v. FixtureOne Corp.*, 181 Wash.2d 642, 655 (2014). To qualify as a "bona fide" dispute, it must be "fairly debatable" as to whether an employment relationship exists or whether the wages must be paid. *Schilling*, 136 Wash.2d at 161. Generally, the issue of whether the withholding of wages was "willful" is a question of fact; however, if reasonable minds could reach but one conclusion from those facts, the issue may be decided as a matter of law. *Failla*, 181 Wash.2d at 655.

This Court finds Defendants are entitled to summary judgment on this claim as there can be no dispute that Defendants did not willfully withhold wages. Dr.

ORDER GRANTING RECONSIDERATION AND AMENDING THE
SUMMARY JUDGMENT ORDER ~ 29

1    Busey's employment was lawfully terminated in February 2013 pursuant to RCW

2    28A.405.300, as detailed above, and the payroll records show that Dr. Busey was

3    paid through the month of February. Accordingly, Dr. Busey has failed to show

4    what wages were wrongfully withheld.

5          To the extent Plaintiff is asserting that a jury award of damages pursuant to

6    his WLAD claim would lend support for wrongful withholding double damages

7    under RCW 49.52.050, this claim is inapplicable.

8          The key word in the statute is "obligated." If the Washington
        legislature intended for the provision to apply to a situation such as
9          Plaintiffs', it could have stated that any employer who violates any
        statute is subject to double damages. The insertion of the word
10         "obligated" indicates a pre-existing duty imposed by contract or
        statute to pay specific compensation. Thus, a willful and intentional
11         withholding of accrued pay legally owed the employee would subject
        the employer to double damages. Here, the Defendant's "obligation"
12         to pay Plaintiffs the specific amount at issue had not legally accrued
        prior to the jury verdict. It did not stem from a "statute, ordinance, or
13         contract;" rather, it resulted from a retrospective jury verdict.

14   *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1203 (9th Cir. 2002). The Ninth

15   Circuit's reasoning in *Hemmings*, issued in the context of wage discrimination, is

16   instructive here: a retrospective jury award for violation of WLAD does not trigger

17   RCW 49.52.050 as WLAD damages are not wages the employer was "obligated"

18   to pay. *See id.* ("Washington courts have not extended RCW § 49.52.050 to

19   situations where employers violate anti-discrimination statutes."); *Clipse v.*

20   *Commercial Driver Servs., Inc.*, 189 Wash. App. 776, 469-70 (2015) (citing

*Hemmings*, 285 F.3d at 1203-04, and holding that RCW 49.52.050 is inapplicable to damages under the WLAD). Accordingly, Defendants' motion for summary judgment on this claim (ECF No. 76) is **GRANTED**.

**ACCORDINGLY, IT IS ORDERED:**

1.  Defendants' Motion for Reconsideration (ECF No. 92) is **GRANTED** in part.

2.  This Order **AMENDS and SUPERSEDES** this Court's Order of December 22, 2015 (ECF No. 90).

3.  Defendants' Motion for Partial Summary Judgment (ECF No. 76) is **DENIED in part and GRANTED in part**. Defendants' motion is **GRANTED** as to Plaintiff's claims under section 1983 for deprivation of procedural due process, declaratory judgment under RCW 28A.405.300, and withholding of wages under RCW 49.48.010 and 49.52.070. Defendants' motion as to Plaintiff's WLAD claim is **DENIED** as indicated herein.

The District Court Executive is directed to enter this Order and provide copies to counsel.

DATED March 23, 2016.



THOMAS O. RICE
Chief United States District Judge

ORDER GRANTING RECONSIDERATION AND AMENDING THE
SUMMARY JUDGMENT ORDER ~ 31